**Allison C. COLLARD and Julia A. Collard, Plaintiffs,**

v.

**The INCORPORATED VILLAGE OF FLOWER HILL; the Board of Trustees; William R. Howe, Building Inspector; Herbert Ash, Thomas J. Walsh, Robert S. Caine, Alfred E. Runge, and the Zoning Board of Appeals of the Incorporated Village of Flower Hill; and John M. Farrell, Esq., Village Attorney, Defendants.**

**No. CV 82–2143.**

United States District Court,
E.D. New York.

Oct. 30, 1984.

Collard, Roe & Malcolm, Roslyn, N.Y., for plaintiffs.

Schiffmacher, Cullen, Farrell & Limmer, Great Neck, N.Y., Suozzi, English & Cianciulli, P.C., Mineola, N.Y., for defendants.

Memorandum of Decision and Order

MISHLER, District Judge.

Defendants move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) (lack of jurisdiction over the subject matter) and 12(b)(6) (failure to state a claim upon which relief can be granted).

HISTORY

Plaintiffs are the owners of the fee of real property located at the intersection of Northern Boulevard, Ridge Drive West and Ridge Drive East in the Incorporated Village of Flower Hill. Plaintiffs purchased the property in 1977. It consists of 28,000 square feet on which is erected a two-story office building occupying approximately 2,300 square feet.

Prior to 1966, the then vacant property was zoned Residential B–2 District which limited the use to a single family detached house on a lot having a minimum area of 7,500 square feet. The property consisted of three lots, i.e., lots 9, 12 and 13. In 1966, the Board of Trustees granted the then owners' application to have lots 9 and 13 rezoned from the use of single family residence to a General Municipal and Public Purposes District which permitted the property to be used as a sanitarium with accessory doctors' offices. As a condition to granting the application, the owner executed a covenant restricting the use of lots 9 and 13 as provided in the rezoning. The sanitarium was constructed, but the operators found the use of the property as a sanitarium unprofitable. A further application was made in 1976 requesting a rezoning into a Business District. As part of the application, lot 12 was included in the request. The application was granted. As a condition the owner was required to execute a covenant restricting the entire plot, lots 9, 12 and 13, to certain professional type uses, i.e., medicine, dentistry, law, engineering, architecture or accounting, and limiting the number of tenancies. It further required that all alterations and extensions to the existing building be approved by the Board of Trustees. Such a covenant was executed by the owner and recorded in the Office of the Clerk of Nassau County as a restriction on the use of the property running with the land. The covenants recited that the property was "zoned as part of the Business District of the Village in accordance with the provisions of Chapter 86, Section 86–12 of the Code of the Village of Flower Hill." It limited changes to the existing buildings as follows:

No building or structure situated on the subject premises on the date of the Declaration of Covenants will be altered, extended, rebuilt, renovated or enlarged without the prior consent of the Board of Trustees of the Village.

In December, 1978, plaintiffs petitioned the Board of Trustees for its consent to alter and enlarge the existing building. The application was denied on or about January 12, 1979. Plaintiffs commenced an action in the Nassau County Supreme Court against the Village of Flower Hill in April, 1979.

The complaint claimed that the Board's action "deprived plaintiffs of an authorized use of the premises" (State Comp.Par. 7) and that the Board's action was "unconstitutional and confiscatory and violates the Constitution of the State of New York and [the] Constitution of the United States, which in substance forbids actions by Government authorities depriving any person of property without due process of law" (State Comp.Par. 8). The complaint was dismissed by order of the Appellate Division of the Supreme Court for the Second Judicial Department for failure to state a cause of action. *Collard v. Incorporated Village of Flower Hill*, 75 A.D.2d 631, 427 N.Y.S.2d 301 (1980). The Court of Appeals affirmed, 52 N.Y.2d 594, 439 N.Y. S.2d 326, 421 N.E.2d 818 (1981).

Plaintiffs thereafter submitted a site plan to the Building Inspector of the Village of Flower Hill proposing the erection of a new building to the rear of the existing building on lot 12. The Building Inspector denied the application on the ground that it failed to comply with section 86–12 of the Village Code in the minimum rear yard requirement, pointing out that under section 86–12 of the Code, lot 12 was the rear yard of the existing building. Plaintiffs subsequently submitted a formal plan for the erection of a second office building on lot 12 on the same location as the proposed addition. They sought a variance from the rear yard requirement and height regulation. The proposed plan for the new office building consisted of five levels, each level having an area of approximately 2,690 square feet—a total of 13,450 square feet. The application was considered by the Nassau County Planning Commission.[1] The Nassau County Planning Commission denied the application. The denial was sustained by the Zoning Board of Appeals of the Village of Flower Hill.

On July 21, 1982, plaintiffs petitioned the Nassau County Supreme Court for a review of the determination by the Zoning Board of Appeals. The petition claimed that "[t]he Board's denial of the application results in an unlawful confiscation of the Petitioners' property, since it cannot be used for the construction of a separate commercial building." (Plaintiffs' State Petition Par. 41).

On November 9, 1982, the Nassau County Supreme Court upheld the Zoning Board of Appeals' interpretation of the definition of lot and sustained the prohibition of more than one principal building per lot. *Collard v. Runge*, No. 14312/82 (N.Y.Sup.Ct. Nassau Co. Nov. 9, 1982) (unpublished decision), *aff'd without opinion*, 99 A.D.2d 687, 471 N.Y.S.2d 731 (2d Dep't 1984), *appeal denied*, 64 N.Y.2d ——, —— N.Y.S.2d ——, 472 N.E.2d 327 (N.Y.Ct.App.1984).

In the meantime, on July 21, 1981, plaintiffs filed a complaint in this court claiming their civil rights were violated by the unconstitutional and confiscatory action by the Board in denying consent to extend the existing building (first claim) and denying a permit for the construction of a second building on lot 12 (second claim). In the first claim, the complaint alleges a conspiracy between the Village of Flower Hill and John M. Farrell, Jr., attorney for the Board and the Village. The second claim alleges a conspiracy among Farrell, William R. Howe (the Building Inspector) and the defendant members of the Zoning Board of Appeals who voted to sustain the determination of the Nassau County Planning Commission. Plaintiffs seek compensatory and punitive damages and a declaration "that the actions of the Board of Appeals ... be [found] arbitrary, capricious and illegal and [to] grant plaintiffs the right to build the proposed building on their property." (Comp. p. 9). Defendants had moved to dismiss the complaint pursuant to Fed.R. Civ.P. 12(b). All proceedings in this case were stayed pending review of the state court decision on appeal. *Collard v. Incorporated Village of Flower Hill*, No. 82–2143 (E.D.N.Y. Dec. 10, 1982) (unpublished memorandum of decision and order). The

---

1. Section 239–m of the New York General Municipal Law requires that where the property affected is within 500 feet of the Village boundary, the application must be reviewed by the Nassau County Planning Commission.

state court order was affirmed by the Appellate Division of the Supreme Court, Second Judicial Department, by summary order, without opinion, entered January 9, 1984. The Court of Appeals denied leave to appeal on June 29, 1984.

This court, having withheld action on the original motion to dismiss, is now called upon to decide that motion.[2] The defendants moved for such consideration. The plaintiffs moved to vacate the stay.

DISCUSSION

*Res Judicata/Collateral Estoppel*

The Supreme Court in *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984), restated the preclusive effect of a prior adjudication on a subsequent action: "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)."[3] Quoting from *Standefer v. United States*, 447 U.S. 10, 24, 100 S.Ct. 1999, 2008, 64 L.Ed.2d 689 (1980), the Court pointed to the reason for preclusion as follows: "[N]o significant harm flows from enforcing a rule that affords a litigant only one full and fair opportunity to litigate an issue, and ... there is no sound reason for burdening the courts with repetitive litigation." *Id.* 464 U.S. at ——, 104 S.Ct. at 572.

The doctrine of collateral estoppel may be invoked where the issue of law or fact in the subsequent proceeding has been litigated and determined by a valid and final judgment. *Wilson v. Steinhoff,* 718 F.2d 550, 552 (2d Cir.1983). It is not necessary that the parties be identical in both suits. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (permitting the use of offensive collateral estoppel). Court have construed 28 U.S.C. § 1738 so as to require federal courts to "give preclusive effect to state court judgments whenever the courts of the state from which the judgments emerge would do so." *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980); *Derish v. San Mateo-Burlingame Board of Realtors,* 724 F.2d 1347, 1349 (9th Cir.1983).

In *Allen v. McCurry, supra,* the Supreme Court held that "issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." *Migra v. Warren City School District,* 465 U.S. 75, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984) (emphasis added). The *Allen* decision, however, left open the question as to the preclusive effect of a state court judgment concerning a federal issue that a § 1983 plaintiff *could have* raised but did *not actually* raise in the earlier state court proceeding. *Allen v. McCurry, supra,* 449 U.S. at 97 n. 10, 101 S.Ct. at 416 n. 10. In so doing, the Second Circuit decision in *Lombard v. Board of Education,* 502 F.2d 631 (1974) (rejecting the application of *res judicata* in a § 1983 action where the federal constitutional claim was *not actually* litigated in the prior state court proceeding), *cert. denied,* 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975), arguably retained its validity. *But see Sachetti v. Blair,* 536 F.Supp. 636, 640 (S.D.N.Y.1982) (questioning whether *Lombard* is still good law after *Allen v. McCurry* and concluding that "at the very least, one must read the *Lombard* holding narrowly, and should not expand it beyond its precise facts"). Thus, plaintiffs urge the court to accept the *Lombard* decision as controlling and argue that the constitutional issues raised in this present federal litigation were never actually litigated in either of the two prior state court proceedings. Defendants argue that *Lombard* was overruled by *Allen v. McCurry, supra.*

---

**2.** Though defendant moved pursuant to Fed.R. Civ.P. 12(b), both sides submitted affidavits and documents in support of their respective positions.

**3.** *Res judicata* is sometimes referred to as "claim preclusion and collateral estoppel as "issue preclusion." *United States v. Mendoza, supra.* 464 U.S. at ——, n. 3, 104 S.Ct. at 571 n. 3.

■ I reject plaintiffs' argument that *Lombard* is still good law and should apply to the case at bar. The recent Supreme Court decision in *Migra v. Warren City School District, supra,* 465 U.S. at ——, 104 S.Ct. at 897, clearly confronted the issue previously left open by *Allen v. McCurry.* In so doing, the *Migra* court rejected the Second Circuit's view espoused in *Lombard* that § 1983 prevents a state court judgment from having preclusive effect on constitutional issues raised in a subsequent federal proceeding which were not actually—although they could have been—raised in the state court proceeding. *Migra v. Warren City School District, supra,* at ——, 104 S.Ct. at 897-98. I further find, for reasons later discussed, that the issues in both claims were either actually litigated or could have been litigated in the prior state court proceedings and thus, those state court final judgments impose a claim-preclusive effect on the present litigation.

■ In the first state court action plaintiff argued that the Board's action in withholding its consent to extend the existing building was arbitrary and capricious.[4] The New York Court of Appeals rejected the claim and held that the Board was not required to state the reasons for the rejection. *Collard v. Incorporated Village of Flower Hill, supra,* 52 N.Y.2d at 604, 439 N.Y.S.2d at 331, 421 N.E.2d at 823.

In the second action, the state court sustained Village of Flower Hill's interpretation of the term "lot" in Village Code § 86-1, and found the limitation of one principal building per lot as provided in Village Code § 86-12 reasonable. *Collard v. Runge, supra.*

The complaint before this court phrases the actions of the Village of Flower Hill in terms of constitutional violations. The first claim alleges that defendants' denial of plaintiffs' request for permission to alter and extend the existing building and defendants' failure to conduct a hearing on the request violated plaintiffs' right to pro-

cedural due process, and violated plaintiffs' right to substantive due process by "impairing the value of plaintiffs' commercial property without compensation." (Comp. Par. 16). The second claim charges a conspiracy (in which Farrell, the Village Attorney, is charged as prime mover) to redefine the definition of § 86-1 of the Village Code (Comp.Par. 23) and to pass amendments to the Code to prevent the construction of a second building on lot 12 (Comp. Par. 25) which resulted in a "taking of Plaintiffs' property rights without just compensation, [and] the denial to Plaintiffs of due process." (Comp. Par. 29). Plaintiffs' complaint further alleges:

That the denial of a variance is not justified in law; that the specious explanation of the Board of Appeals for its denial involved an illegal and unreasonable interpretation of Village Laws, wherein definitions of laws were re-defined so as to deny Plaintiffs their rights to improve their property.

(Comp. Par. 30).

The conclusory allegations of conspiracy do not add substance to the second claim. *See Ellentuck v. Klein,* 570 F.2d 414, 426 (2d Cir.1978).

*Identity of Issues*

■ The application of the doctrine of *res judicata* or collateral estoppel does not require a showing that the issue in the prior action was framed in the same language or that the same theory of liability was charged as in the subsequent action. The basis of establishing an identity of issues is broader and more practical.

In *O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981), where a property owner failed to sustain a prior suit for de facto appropriation of his property, he was barred from relitigating that issue where the theory of liability asserted in the second action was trespass. Similarly, a prior state court determination on a quasi contract claim bars relitigation in federal court "as to any cause of action arising from the same oper-

---

**4.** Plaintiffs urged the court to imply an agreement that the Village of Flower Hill would not

unreasonably withhold its consent.

ative facts." *RX Data Corp. v. Department of Social Services,* 684 F.2d 192, 198 (2d Cir.1982). Thus, since the subsequent claim (unfair competition) could have been presented in the prior action, that claim was barred in federal court. *Id.*

■ The court in *Derish v. San Mateo-Burlingame Board of Realtors, supra,* set forth helpful guidelines in determining the identity of issues. The court stated:

> To determine whether the Derishes' state and federal suits involve the same claim, we are assisted by asking:
>
> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arose out of the same transactional nucleus of facts.

*Id.* at 1349 (quoting *Harris v. Jacobs,* 621 F.2d 341, 343 (9th Cir.1980)).

■ Since I find an affirmative answer to all four factors suggested in *Derish,* I conclude that the claims raised herein were either actually litigated or could have been litigated in the prior state court actions. Therefore, the prior state court final judgments preclude relitigation of the issues.

### Failure to State a § 1983 Claim

Alternatively, plaintiff has failed to state a § 1983 claim upon which relief can be granted and the claim should therefore be dismissed under Fed.R.Civ.P. 12(b)(6).

■ The procedural due process claim is frivolous. The New York Court of Appeals in *Collard v. Incorporated Village of Flower Hill* held that the Board was not required to give reasons for its denial. *Collard v. Incorporated Village of Flower Hill, supra,* 52 N.Y.2d at 604, 439 N.Y.S.2d at 331, 421 N.E.2d at 823. It follows that a hearing was not required to determine the binding effect of the covenant or the interpretation of the consent clause for extend-

ing the existing building. No further discussion is necessary concerning the adequacy of the hearing on the request for permission to build a second principal building on lot 12.

■ The substantive due process claim is expressed in the "taking without just compensation" allegation. This claim challenges the authority of the Village of Flower Hill in the manner in which it used its police power. *Rogin v. Bensalem Township,* 616 F.2d 680 (3rd Cir.1980), *cert. denied sub nom. Mark Garner Assoc., Inc. v. Bensalem Township,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981), reviewed the history of zoning regulations under the police power of the state and the limitation on that power imposed by the Constitution.[5] The *Rogin* court stated that zoning ordinances "are constitutional if they bear a 'substantial relationship to the public health, safety morals or general welfare.' " *Id.* at 688 (quoting *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926)). The court reviewed the broad scope of the police power under the general welfare clause and quoted from *Berman v. Parker,* 348 U.S. 26, 33, 75 S.Ct. 98, 102–03, 99 L.Ed. 27 (1954), as follows:

> "The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balances as well as carefully patrolled."

*Rogin v. Bensalem Township, supra,* at 688.

In further defining the authority of a subdivision of a state to exercise its police power in restricting land use, the *Rogin* court quoted from *Village of Belle Terre v. Boraas,* 416 U.S. 1, 8, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1974), on what governmental purposes included, as follows:

> "A quiet place where yards are wide, people are few, and motor vehicles are restricted are legitimate guidelines in a

---

**5.** The plaintiff in *Rogin* made a claim similar to that made by the plaintiffs in the instant action in claiming a conspiracy to discourage the con-

struction of the project made the subject of the litigation.

land-use project addressed to family needs.... The police power is not confined to elimination of filth, stench and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet reclusion and clean air make the area a sanctuary for people."

*Rogin v. Bensalem Township, supra,* at 688 (citations omitted) (footnote omitted).

■ Plaintiffs do not allege that the zoning restrictions destroyed the value of their property. They claim a denial of the "right to use its property reasonably" (Comp.Par. 16(b)) and the impairment of the value of the property (Comp.Par. 16(c)) as a result of defendants' decision to refuse plaintiffs' request for "permission to alter and extend the existing building." (Comp.Par. 16). The constitution does not protect a property owner's right to make more money than the zoning regulations permit, or a right to a fair market value of property at its highest and best use. *See Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (designation of Grand Central Station as a landmark, depriving Penn Central of the use for a high rise office building causing substantial individualized harm is not unconstitutional); *Goldblatt v. Town of Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962) (an ordinance banning any excavation below the water table preventing plaintiff from continuing sand and gravel business he operated for 30 years is not unconstitutional).

Recently, the Second Circuit Court of Appeals in *Park Avenue Tower Associates v. City of New York,* 746 F.2d 135 (1984), in affirming a grant of summary judgment dismissing the complaint, stated that a "legion of cases ... have upheld regulations which merely diminished the value of commercial property." At 139.

■ The plaintiffs in the instant case do not complain of an ordinance that reduces the value of their property, but complain that the Village of Flower Hill refuses to grant their request under existing regulations that would have the effect, if granted,

of increasing the value of their property. I find, however, regardless of this difference, that plaintiffs' substantive due process claim is controlled by the foregoing decisions and should be dismissed under Fed.R.Civ.P. 12(b)(6).

*Motion to Amend the Complaint*

■ Plaintiffs move for leave to amend the complaint by adding a third claim. The claim alleges "purposeful discrimination" and a violation of plaintiffs' right to "equal protection of laws." The claim is based on the same operative facts litigated in the prior state court actions. A new theory based on the same facts does not avoid the preclusive effect of the prior judgments. The motion is denied.

ORDER

The complaint is dismissed. The Clerk is directed to enter judgment in favor of defendants and against the plaintiffs dismissing the complaint.[6]

SO ORDERED.

---

6. Plaintiffs' motion to vacate the stay of pre-trial discovery is rendered moot.