Crawford S. NORRIS and Kathleen Norris, Plaintiffs,

v.

GROSVENOR MARKETING LIMITED, and R. Twinings & Co. Ltd. (U.S.A.) and R. Twining and Company, Ltd., Defendants.

No. 85 Civ. 3194 (CHT).

United States District Court, S.D. New York.

April 7, 1986.

---

Lane & Mittendorf, New York City, for plaintiffs; Christopher R. Belmonte, of counsel.

Debevoise & Plimpton, Weisman, Celler, Spett, Modlin & Wertheimer, New York City, for defendants; Martin Frederic Evans, David W. Rivkin, Timothy Cone, Steven L. Cohen, of counsel.

## OPINION

TENNEY, District Judge.

The plaintiffs in this diversity action, Crawford S. Norris ("Norris") and his wife Kathleen Norris ("Mrs. Norris"), are asserting three claims against the defendants. All of the claims are based on a contract that Norris entered into in 1969 with Robert R. Cooper ("Cooper"), who is not a party to this action. The plaintiffs claim that (1) Cooper breached his fiduciary duties, and the defendants participated in that breach, (2) the defendants tortiously interfered with the contract between Norris and Cooper, and (3) the defendants wrongfully deprived the plaintiffs of future payments owed to them under the pertinent contract.

The defendants argue that these claims were fully adjudicated in an arbitration proceeding that was instituted by Norris against Cooper. The defendants contend that the plaintiffs' claims should be dismissed under the doctrines of collateral estoppel and res judicata. The defendants also argue that the plaintiffs' claims are time barred, and they have moved for dismissal of the action pursuant to Fed.R. Civ.P. ("Rule") 12(b) and 56.

The Court concludes that the doctrine of collateral estoppel bars the action. Accordingly, the defendants' motion for summary judgment is granted.

## BACKGROUND

The defendant R. Twining and Company, Ltd. ("Twining") prepares and sells tea throughout the world.[1] Norris was the United States distributor for Twining's tea for almost forty years. Norris distributed

---

1. The defendant R. Twinings & Co. Ltd. (U.S.A.) operates a tea packaging factory in North Carolina. For a more complete history of this matter see 61 N.Y.2d 299, 473 N.Y.S.2d 774 (1984).

the tea pursuant to a license issued by Twining.

In 1969, Twining advised Norris that his license would not be renewed when it expired in 1970. Twining also told Norris that Twining intended to license Cooper as its United States distributor.

Norris subsequently agreed to sell to Cooper the distribution network that Norris had developed, including warehouse inventories and customer lists. Cooper and Norris entered into a contract of sale in 1969 ("1969 Agreement" or "Agreement") which provided that Norris would receive 50% of "the annual after-tax net operating profits" from 1971 to 1975, and 25% of such profits thereafter. The Agreement provided that Norris would receive such profits as long as Cooper was licensed to distribute Twining's tea. The Agreement also established that—in the event that Norris should pre-decease his wife—the agreed on payments would be made to Mrs. Norris.

In 1979, Twining advised Cooper that his license would not be renewed when it expired in 1981. Cooper sold the distribution network in 1979 to the defendant Grosvenor Marketing Limited ("Grosvenor"), a Delaware corporation, which is an affiliate of Twining. Cooper also stopped making payments to Norris.

Claiming that Cooper had breached his contract, Norris instituted an arbitration proceeding against Cooper.[2] Norris submitted the issue to arbitration rather than to the court because the 1969 Agreement

included an arbitration clause requiring that all disputes be settled by arbitration.

The arbitrator awarded Norris $750,000 for "[d]isposition of assets," which was 25% of the sale price.[3] The New York Court of Appeals subsequently confirmed the arbitration award. *See* 61 N.Y.2d 299, 474 N.Y.S.2d 774 (1984). Cooper paid Norris the full amount owed.

Norris and his wife then instituted this action. Cooper is not a party. The question before the Court is whether the plaintiffs are barred from litigating their claims against the defendants because of the prior arbitration proceeding.[4]

## DISCUSSION

The defendants contend that the plaintiffs' claims are barred under the doctrines of res judicata and collateral estoppel. Both doctrines deal with the question of whether the adjudication of certain matters is precluded by prior adjudication. *See Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466 n. 6, 102 S.Ct. 1883, 1889–90 n. 6, 72 L.Ed.2d 262 (1982). Under the doctrine of res judicata, parties and their privies are precluded from litigating claims that were or could have been raised in a prior action. *See Wilson v. Steinhoff*, 718 F.2d 550, 552 (2d Cir.1983). It is not necessary that the parties be identical in both suits. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Collard v. Village of Flower Hill*, 604 F.Supp. 1318, 1322 (E.D.N.Y.1984), *aff'd*, 759 F.2d 205, *cert. denied*, —— U.S.

---

2. Mrs. Norris was not a party to the arbitration proceeding, since she was not a signatory of the 1969 Agreement. Her claims in the present action, however, are based on the 1969 Agreement as a beneficiary thereunder. Mrs. Norris is entitled to payments under the 1969 Agreement only if her husband is entitled to such payments. The purpose of the arbitration was to determine whether or not Norris was entitled to any payments under the Agreement, and Norris asserted not only his own claim for payment, but his wife's claim as a beneficiary as well. *See* Claimant's Hearing Memorandum at 23–24. Thus, the discussion herein concerning the arbitration proceeding applies to the claims asserted by both plaintiffs.

3. The arbitrator also awarded Norris $26,694, which was the final payment due to Norris for 1979 profits. The company was sold as of 1980. That payment is not at issue here.

4. The defendants moved pursuant to Rule 12(b) to dismiss the action on the pleadings. The parties, however, have presented, and the Court has considered, matters outside the pleadings, including affidavits, 3(g) Statements, and portions of the arbitration proceeding transcript. Therefore, the Court has treated the motion as one for summary judgment. *See* Rules 12(b) and 56. Both parties anticipated that the Court might do so, and addressed the issues accordingly. *See* Plaintiffs' Memorandum at 2; Defendants' Reply Memorandum at 22.

——, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985). Furthermore, collateral estoppel can be invoked where, as here, the prior proceeding was an arbitration proceeding and a final judgment has been entered. *See Ufheil Const. Co. v. Town of New Windsor*, 478 F.Supp. 766, 768 (S.D.N.Y.1979), *aff'd*, 636 F.2d 1204 (2d Cir.1980); *see also American Ins. Co. v. Messinger*, 43 N.Y.2d 184, 189–90, 401 N.Y.S.2d 36, 39, 371 N.E.2d 798, 801–02 (1977).

■■■■ In a diversity action in federal court, state law controls the question of whether collateral estoppel is applicable. *See Ritchie v. Landau*, 475 F.2d 151, 154 (2d Cir.1973). New York has adopted a two-prong test: First, "[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action and second, there must have been a full and fair opportunity to contest the decision now said to be controlling." *Schwartz v. Public Administrator of the County of Bronx*, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 729 (1969); *see also Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 501, 478 N.Y.S.2d 823, 827, 467 N.E.2d 487, 491 (1984); *Gilberg v. Barbieri*, 53 N.Y.2d 285, 291, 441 N.Y.S.2d 49, 50, 423 N.E.2d 807, 808 (1981). Applying this standard in the case at bar, the Court concludes that the plaintiffs are barred from litigating the subject claims under the doctrine of collateral estoppel.

The plaintiffs are alleging the same foundation facts in this case as they did in the arbitration proceeding: i.e., Cooper's breach of contract. The plaintiffs are also seeking the same remedy as they sought in the arbitration, although the amount has been inflated for the purposes of this action.

■■ The complaint in the present case essentially alleges that the defendants tortiously interfered with the contract be-tween Cooper and Norris, by inducing Cooper to breach the contract and his fiduciary duties thereunder. The plaintiffs contend that collateral estoppel is inappropriate since they are asserting a cause of action in tort in this case, whereas they asserted a contract action in the prior proceeding. The critical factor, however, is not the theory of liability on which the case proceeds; the critical factor is whether liability is premised on the same issues in both proceedings. *See Collard v. Village of Flower Hill*, 604 F.Supp. at 1323.[5] In this case it is.

The complaint in this action contains three counts. The first count alleges that the defendants conspired with Cooper to deprive the plaintiffs of the benefits of the tea distributorship. It also alleges that Cooper breached his fiduciary duties to Norris, and that the defendants participated in and profited from Cooper's breach of duty.

Norris raised the same issues at the arbitration proceeding and requested appropriate compensation. In his Hearing Memorandum ("HM"), Norris claimed that Cooper had violated his fiduciary duty to Norris, and, therefore, Norris was "entitled to 25% of the payment Cooper received for terminating the Twining agency." HM at 10–11. In a separate section of the Memorandum, Norris argued that Cooper had violated his duty of good faith and fair dealing. HM at 18. Norris argued that Cooper profited from the termination of the contract, while Norris was deprived of those benefits.[6]

The second count of the complaint in the present action alleges that the defendants tortiously interfered with Cooper's performance of his contractual obligations, and, therefore, the defendants were deprived of the payments owed to them under the 1969 Agreement. At arbitration, Nor-

---

**5.** *Accord O'Brien v. Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 688, 429 N.E.2d 1158 ("[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seek-ing a different remedy.") (citing *Matter of Reilly v. Reid*, 45 N.Y.2d 24, 29–30, 407 N.Y.S.2d 645, 648–49, 379 N.E.2d 172, 175–77 (1978)).

**6.** Norris reiterates the same claims in his Post-Hearing Memorandum.

ris argued that Cooper had breached the contract between them. Norris claimed that he was entitled to 25% of the sale price as general damages for the breach of contract. In each instance—in the claims asserted at arbitration and in counts one and two of the complaint—the claims are premised on Norris' right under the 1969 Agreement to receive a portion of the profits generated by the distributorship, and Cooper's breach of the 1969 Agreement.

The third count in the complaint is the same as the third claim asserted at arbitration. The complaint alleges that under the 1969 Agreement the plaintiffs were entitled to receive future payments, based on a "life interest" in the distributorship, and that Norris and his wife are being wrongfully deprived of those future payments because Cooper breached the contract. The plaintiffs denominate the third count as being a cause of action for unjust enrichment.

■ At arbitration, Norris requested that the arbitrator award $948,259 for the loss of future payments. Norris based that figure on "a conservative five-year life expectancy of Norris and his wife[.]"

Thus, the issue of the right to future payments, based on the plaintiff's "life interest" in the distributorship under the 1969 Agreement, has already been adjudicated.[7]

The arbitrator awarded the plaintiff $750,000 for the "[d]isposition of assets," which constituted 25% of the sale price. Although the arbitrator did not set forth specific findings of fact in awarding that sum, the damages correspond to Norris' claim that he was entitled to 25% of the sale price as compensatory damages for breach of contract, and breach of fiduciary duty. The arbitrator made no award for future profits earned by the distributorship, despite Norris' specific request for such an award.[8]

■ It is clear from the record in this case, and from the arbitrator's award, that the issues decided by the arbitrator are the same as those in the present proceeding. In both proceedings, Norris alleged that he was deprived of his right of payment—present payments and "life time" payments—under the 1969 Agreement. These issues have been adjudicated once and cannot be relitigated here.[9]

---

**7.** The plaintiffs contend that they should not be barred from bringing the present action against the instant defendants, since the defendants were not obligated to submit to the prior arbitration proceeding. The controlling question, however, is not whether the plaintiffs have previously litigated against these defendants, but rather, whether the plaintiffs have previously litigated the same issues. *See Lowell v. Twin Disc, Inc.*, 527 F.2d 767, 771 (2d Cir.1975) ("If the issue [decided in the first action] was found adversely to the plaintiff, he is bound in the second action even though the defendant ... is not the same.... The lack of mutuality of estoppel is not fatal."); *Ritchie v. Landau*, 475 F.2d at 155 ("[U]nder New York law [the defendant's] defense of collateral estoppel can prevail despite the fact that [he] was not a party to the [prior] arbitration[.]").

**8.** Norris and his wife base their claim for future payments on paragraph 4(a) of the 1969 Agreement which provided that Norris was entitled to "25% of the annual after-tax net operating profits of [the distributorship] arising after December 31, 1975, ... to be payable ... during the lifetime of Norris, ... and, in the event of his prior death, to his wife during her lifetime." Norris argues, as he did at arbitration, that this

paragraph gives him a "life interest" in the profits of the distributorship.

Under Paragraph 4, however, Cooper is obligated to make payments only as long as he is licensed by Twining to act as its distributor in the United States. Paragraph 4 provides: "Norris will be entitled to receive [the agreed on payments] during the term of [Cooper's] distributorship agreement with Twining[.]" Cooper's distributorship agreement with Twining expired in 1981. Thus, Norris' right to payments also terminated in 1981.

It should also be noted that there is no indication anywhere in the record that Twining had any obligation to renew its distributorship agreement with Cooper in 1981 or with Norris in 1970.

**9.** The plaintiffs have not alleged any additional damages flowing from the wrongful acts of the defendants. Norris received substantial compensation for the injuries complained of, and he cannot recover twice for the same injury. *See Ritchie v. Landau*, 475 F.2d at 156; *Simon v. Royal Business Funds Corp.*, 29 N.Y.2d 692, 692, 325 N.Y.S.2d 649, 649, 275 N.E.2d 21, 21 (1971); *Boehm v. Ekco Products Co.*, 47 A.D.2d 807, 807, 365 N.Y.S.2d 101, 102 (1975).

The second prong of New York's collateral estoppel test is also satisfied in this case, since the plaintiffs had a fair opportunity during the arbitration proceeding to fully litigate the pertinent issues. The plaintiffs were represented by counsel at the arbitration, and Norris testified on his own behalf. His attorney cross-examined not only Cooper, but also a number of Twining employees.

In sum, the plaintiffs were provided a fair opportunity to litigate their claims concerning the 1969 Agreement and Norris received a substantial award for damages. That award was confirmed by the court, and Cooper paid the full amount owed. The plaintiffs cannot relitigate the issues now.[10] Accordingly, the defendants' motion for summary judgment is here granted. The defendants' motion for attorneys' fees is denied.

So ordered.

---

**10.** The defendants also claim that the plaintiffs' claims are time barred, and that the plaintiffs have failed to state a claim against the defend-ant R. Twinings & Co. Ltd. (U.S.A.). The Court does not reach those issues in light of this opinion.