803 F.2d 1281
 6 Fed.R.Serv.3d 109
 Crawford S. NORRIS and Kathleen Norris,
Plaintiffs-Appellants, Cross-Appellees,
v.
GROSVENOR MARKETING LIMITED and R. Twinings & Co. Ltd.
(U.S.A.) and R. Twining and Company, Ltd.,
Defendants-Appellees, Cross-Appellants.
 No. 24, Dockets 86-7344, 86-7372.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 9, 1986.
Decided Oct. 27, 1986.
 
 Christopher R. Belmonte, New York City (Lane & Mittendorf, New York City, Linda K. Singer, of counsel), for plaintiffs-appellants, cross-appellees.
 Martin Frederic Evans, New York City (Debevoise & Plimpton, David W. Rivkin and Weisman, Celler, Spett, Modlin & Wertheimer, New York City, Steven L. Cohen, of counsel), for defendants-appellees, cross-appellants.
 Before LUMBARD, KEARSE, and WINTER, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 Crawford Norris and his wife Kathleen Norris, plaintiffs in this diversity action, appeal from the entry of an order in the Southern District, Charles H. Tenney, Judge, granting summary judgment for defendants Grosvenor Marketing Limited (Grosvenor), R. Twinings & Co. Ltd. (U.S.A.) (Twinings (U.S.A.)) and R. Twining and Company, Ltd. (Twining). In a decision reported at 632 F.Supp. 1193 (S.D.N.Y.1986), the district court held the Norrises' claims had been fully adjudicated in an arbitration proceeding between Norris and a third party not involved in this action. The Norrises therefore were collaterally estopped from reasserting those claims. On appeal, the Norrises contend that summary judgment was improperly granted because the arbitrator did not unambiguously decide issues dispositive of the claims presented in this action. Defendants argue that the grant of summary judgment may be upheld either on the grounds relied upon by the district court or on the alternative ground that plaintiffs' claims were time barred. They also cross-appeal, claiming that the district court erred in denying their motion for attorneys' fees under Fed.R.Civ.P. 11.[1]
 
 
 2
 We affirm Judge Tenney's grant of summary judgment for defendants on both theories argued by defendants on appeal. However, we agree with defendants that plaintiffs' claims were "destined to fail;" accordingly, we remand the case for determination of appropriate sanctions under Rule 11.
 
 
 3
 The parties do not dispute the basic facts. Twining, a British corporation, prepares and sells a well-known brand of tea worldwide. Crawford Norris distributed Twining Tea in the United States from the 1930s until 1969. In the late 1960s, Robert R. Cooper began assisting Norris in the operation of his business and eventually became a director of the Norris Agency. In 1968, Twining approached Cooper about becoming its United States distributor, indicating that it had decided not to renew Norris' license when it expired in 1970. Cooper accepted Twining's proposal. In June, 1969, Twining informed Norris that his agency would not be renewed when it expired.
 
 
 4
 Subsequently, Norris agreed to sell his distribution system to Cooper. In a December, 1969 agreement, Norris transferred to Cooper his distributorship agreement with Twining, his inventory and customer lists, his unfilled sales orders, and the lease for his midtown Manhattan offices. Norris further agreed not to compete in the tea or coffee business in the United States for six years, to resign from Twining's board of directors and renounce all claims against Twining, and to assist Cooper's new corporation by providing consultative services and below-market financing. In return, Norris was to receive a specified percentage, eventually 25%,[2] of the "after-tax operating profits" of Cooper's agency during the term of its distributorship agreement with Twining, including any renewals and extensions. These payments were to be made for Norris' lifetime and, in the event he predeceased his wife, for his wife's lifetime. The contract finally required any controversies arising under it to be submitted to arbitration. Cooper made payments to Norris under this agreement from 1970 until the fall of 1979.
 
 
 5
 In 1976, Twining renewed Cooper's distributorship. The renewal agreement provided that either party could terminate the agency on or after December 31, 1981, by giving the other party two years notice. In December, 1979, Twining gave such notice to Cooper. On March 31, 1980, Cooper authorized Grosvenor, an affiliate of Twining which has been distributing tea in the United States since the end of the Cooper distributorship, to accelerate the two-year notice provision. The distributorship therefore was terminated effective January 1, 1980. In exchange, Cooper received a $3 million payment "for the cancellation of the distributorship agreement" and a $40,000 payment for signing a covenant not to compete.
 
 
 6
 In the fall of 1979, Cooper stopped making payments to Norris under the 1969 agreement. After repeatedly requesting that Cooper resume making payments, Norris instituted arbitration proceedings against him on January 20, 1981. The notice of intention to arbitrate read:
 
 
 7
 Whether or not you, Robert R. Cooper, have breached the provisions on your part to have been performed in the [December, 1969] agreement with respect to the payment to Crawford S. Norris of an agreed portion of the annual profits of the business of R.R. Cooper, Ltd.
 
 
 8
 In a memorandum submitted to the arbitrator prior to the hearing, Norris delineated three claims: $29,694 for the payments that Cooper had not made during 1979, $775,000, representing 25% of the payments received by Cooper under the agreement with Twining to cancel his distributorship, and finally, $948,259 in general contract damages. Norris calculated this last figure by multiplying $189,652, the average annual share of profits received by Norris under the 1969 agreement during the final four years of the Cooper distributorship, by a five year life expectancy for Norris and his wife. Norris based his final claim on the theory that Cooper had breached the 1969 agreement by inducing Twining to terminate his distributorship, thereby depriving Norris of his 25% share of the distributorship's future profits.
 
 
 9
 Norris and Cooper presented evidence on these claims during a five-day arbitration proceeding. Although Twining was not a party to the arbitration, Sam H.G. Twining, Twining's export director, and F. James McGilloway, Twining's chief operating officer, testified on Cooper's behalf regarding the distributorship. However, each refused to answer questions about the operations of Twining's United States distributorship after it was taken over by Grosvenor in April, 1980, claiming that such information was privileged to Twining and not relevant to the arbitration proceeding. Prompted by repeated requests for such information, the arbitrator ruled that he would not "permit any introduction at this time of any financial information on the operation" of the distributorship after 1980. After the hearing, Norris submitted a memorandum to the arbitrator in which he asserted that the evidence supported recovery of each of his three claims against Cooper.
 
 
 10
 The arbitrator finally awarded Norris $26,694 for the missed payments from 1979, and $750,000 as Norris' share of Twining's $3 million payment to Cooper for disposition of assets.[3] The award stated that it was "in full settlement of all claims and counterclaims submitted to the arbitration." After the New York Court of Appeals affirmed the arbitrator's decision in In re Arbitration between Silverman and Benmor Coats, Inc., 61 N.Y.2d 299, 473 N.Y.S.2d 774, 461 N.E.2d 1261 (1984) (consolidated case), Cooper paid the award in full.
 
 
 11
 The Norrises commenced this suit against Grosvenor, Twining, and Twining (U.S.A.) in the Southern District on April 25, 1985, stating three causes of action. Their first claim alleged that defendants knowingly participated in Cooper's breach of his fiduciary duties under the 1969 agreement, thereby depriving the Norrises of their right to receive 25% of the "after-tax operating profits" of Twining's United States distributorship for the remainder of their lives. The second claim asserted that defendants tortiously interfered with Cooper's performance of his contractual obligations under the 1969 agreement, similarly depriving the Norrises of their lifetime payments. In their third claim, the Norrises argued that Twining wrongfully converted their "life interests" in a 25% share of the profits of the United States distributorship. Apparently, the Norrises' theory was that their interest in the distributorship arose from the 1969 agreement between Norris and Cooper. Plaintiffs demanded $20 million in actual damages and an additional $10 million in punitive damages.
 
 
 12
 Before answering, the defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b) and also requested sanctions under Fed.R.Civ.P. 11. On April 7, 1986, the district court, treating the motion as one for summary judgment, granted the motion and dismissed the complaint. Judge Tenney ruled that plaintiffs' claims were barred by the doctrine of collateral estoppel. He did not consider defendants' argument that plaintiffs' claims were time barred; he denied without discussion defendants' request for sanctions. The Norrises appeal the grant of summary judgment. Defendants cross-appeal the denial of sanctions.
 
 
 13
 On appeal, plaintiffs argue that summary judgment was inappropriate because the arbitration did not unambiguously resolve the liability issue presented in the instant case.[4] We disagree. All of the plaintiffs' claims raise but a single issue: the right of the Norrises to participate in the continued profits of Twining Tea's United States distributorship. That issue has already been decided at the Norris-Cooper arbitration proceeding.
 
 
 14
 The parties agree that New York law determines the applicability of the doctrine of collateral estoppel in this diversity action. See Ritchie v. Landau, 475 F.2d 151, 154 (2d Cir.1973). New York has adopted a two-prong "full and fair opportunity" test for deciding whether an issue has been determined by previous litigation, Schwartz v. Public Administrator, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969). First, the issue dispositive of the present action must have been necessarily decided in the prior action. This does not mean that the prior decision must have been explicit. "If by necessary implication it is contained in that which has been explicitly decided, it will be the basis for collateral estoppel." 5 J. Weinstein, H. Korn, & A. Miller, New York Civil Practice p 5011.27, at 50-176 (1985); see, e.g., Winters v. Lavine, 574 F.2d 46, 60-61 (2d Cir.1978) (construing effect of prior New York judgment). Second, there must have been a full and fair opportunity to contest the previous decision. Schwartz, 298 N.Y.S.2d at 960, 246 N.E.2d at 729. See also Ryan v. New York Telephone, 62 N.Y.2d 494, 500-01, 478 N.Y.S.2d 823, 826-27, 467 N.E.2d 487, 490-91 (1984); Gilberg v. Barbieri, 53 N.Y.2d 285, 291, 441 N.Y.S.2d 49, 51, 423 N.E.2d 807, 809 (1981).
 
 
 15
 In his pre-hearing memorandum, Norris squarely argued to the arbitrator that he was entitled to a 25% share of the profits of the distributorship for the remainder of his and his wife's life. Norris repeated these arguments after presenting his evidence. The arbitrator then awarded Norris $776,694 "in full settlement of all claims and counterclaims submitted to the arbitration." This amount, which included missed payments from 1979 and a quarter share of Twining's $3 million payment to Cooper, did not otherwise include any award for the distributorship's future profits. Thus, the arbitrator heard Norris' "life interest" claim and rejected it--appropriately so as the 1969 agreement, by its own terms, only required payments to be made during the life of Cooper's distributorship with Twining, which Norris knew was dependent upon Twining's continued agreement.
 
 
 16
 The Norrises attack the conclusion that the arbitrator's decision unambiguously rejected their "life interest" claim on several grounds. They argue first that the notice of intent to arbitrate, which did not specifically mention the "life interest" issue, and not the papers submitted to the arbitrator should control the preclusive scope of the arbitration award. However, the law is to the contrary. "[H]aving himself framed the issues, he cannot not now avoid them." Goldstein v. Doft, 236 F.Supp. 730, 734 (S.D.N.Y.1964), aff'd, 353 F.2d 484 (2d Cir.1965), cert. denied, 383 U.S. 960, 86 S.Ct. 1226, 16 L.Ed.2d 302 (1966). Norris was given his opportunity to argue his case to the arbitrator. He should not now be given another bite of the cherry. Cohen v. Dana, 83 N.Y.S.2d 414, 418 (Sup.Ct.1948), aff'd, 275 A.D. 723, 87 N.Y.S.2d 614, aff'd, 300 N.Y. 608, 90 N.E.2d 65 (1949).
 
 
 17
 The Norrises also contend that the arbitrator's decision to exclude evidence relating to the profits earned by the distributorship after it was taken over by Grosvenor raises doubt as to whether he considered the Norrises' "life interest" claim. We disagree. This evidence would have become relevant only if the arbitrator decided that the Norrises were entitled to share in profits earned after the period in which the Cooper distributorship was entitled to profits. Thus, the arbitrator's decision not to hear evidence on that issue "at this time" does not make an otherwise unambiguous award ambiguous. Nor was evidence on the post-1980 profits of Twining's United States distributorship even relevant to the value of the Norrises' alleged life interest. Norris' memoranda to the arbitrator argued that damages should be calculated by using an average of payments received over the final four years of his agreement with Cooper.
 
 
 18
 We also find no merit in the Norrises' argument that collateral estoppel should not apply because the remedy sought in this action differs from the one obtained in the arbitration proceeding. As the district court found, the remedies sought in both proceedings were identical. Plaintiffs should not be given a second chance to litigate the same issue. The fact that plaintiffs base their claims on new legal theories does not shield them from the doctrine of collateral estoppel as liability is premised on the same issue in both proceedings. See Collard v. Village of Flower Hill, 604 F.Supp. 1318, 1323 (E.D.N.Y.1984), aff'd, 759 F.2d 205 (2d Cir.), cert. denied, --- U.S. ---, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985). Finally, the failure of the arbitrator to render detailed findings of fact and conclusions of law does not render the award ambiguous. E.g., Ritchie v. Landau, supra; Reddick v. Carthage Central School District, 91 A.D.2d 1182, 459 N.Y.S.2d 156 (4th Dep't 1983).
 
 
 19
 Turning to the second prong of the full and fair opportunity test, the Norrises claim that they were denied the opportunity to litigate fully and fairly their "life interest" claim because of the arbitrator's decision to exclude evidence on the post-1980 operations of the United States distributorship. As pointed out above, that evidence was irrelevant to the issue of the Norrises' right to share in the distributorship profits after 1980.
 
 
 20
 Simply put, Norris fully argued his "life interest" theory during his arbitration with Cooper, and interests in finality demand that he not be given a second chance to raise the same issue here. "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979) (citation and footnote omitted); see also Tillman v. National City Bank of New York, 118 F.2d 631, 634 (2d Cir.) (collateral estoppel is a "reasonable measure calculated to save individuals and courts from the waste and burden of relitigating old issues"), cert. denied, 314 U.S. 650, 62 S.Ct. 96, 86 L.Ed. 521 (1941).
 
 
 21
 The district court's application of the doctrine of collateral estoppel finds full support in our decision in Ritchie v. Landau, 475 F.2d 151 (2d Cir.1973). In that case a former general counsel filed a diversity action against his former employer and that company's president and largest shareholder, claiming that he had not been paid a bonus owed to him. The company, pursuant to an arbitration agreement in the employment contract, commenced arbitration proceedings. After a hearing, the arbitrator made an award "in full settlement of all claims and counterclaims submitted to this arbitration." The award then was reduced to judgment, and the district court dismissed the case against the corporation. Plaintiff then amended his complaint against the company president to restate his claim on the same facts and to request the same damages, reduced by the amount of the arbitration award. The amended complaint also contained an additional fraud claim. The district court dismissed the amended complaint. We affirmed, stating:
 
 
 22
 Ritchie was provided a fair opportunity to litigate his entire bonus claim in the arbitration proceeding, he did so, the award of the arbitrators reduced the amount he sought but gave him a recovery, the award was confirmed by the Supreme Court of New York on November 23, 1971, and the award has been paid in full. More than this the judicial process is not required to provide to disappointed claimants.
 
 
 23
 Id. at 155.
 
 
 24
 We also affirm because plaintiffs' claims are time barred. Both parties agree that a three year statute of limitations applies to plaintiffs' claim that defendants tortiously interfered with their relationship with Cooper, N.Y.Civ.Prac.Law Sec. 214(4), and that generally the statute begins to run from the date of the induced breach of contract, here no later than April 12, 1980. Fury Imports, Inc. v. Shakespeare Company, 625 F.2d 585 (5th Cir.1980) (applying New York law), cert. denied, 450 U.S. 921, 101 S.Ct. 1369, 67 L.Ed.2d 349 (1981). As the plaintiffs did not commence the present action until April 25, 1985, this claim is time barred. The Norrises argue that the three-year period should not have begun to run until the Court of Appeals affirmed the arbitration award on February 28, 1984. They claim that until that time they made a "tactical decision" to proceed only against Cooper in order to avoid the inconvenience of prosecuting actions in two forums. This argument lacks merit. Appellants cite no authority supporting their position. Their "tactical decision" did not toll the running of the statute. To hold otherwise would emasculate the statute of limitations.
 
 
 25
 The Norrises advance equally meritless arguments to save their other two claims--conspiracy to breach fiduciary duty and unjust enrichment. They contend that a six-year statute of limitations applies to these claims. Even assuming that they state causes of action distinct from the tortious interference claim, thereby avoiding the three-year statute of limitations,[5] these claims would still be barred. An equitable claim cannot proceed where the plaintiff has had and let pass an adequate alternative remedy at law. See Russell v. Todd, 309 U.S. 280, 289, 60 S.Ct. 527, 532, 84 L.Ed. 754 (1940); Singleton v. City of New York, 632 F.2d 185, 190 (2d Cir.1980), cert. denied, 450 U.S. 920, 101 S.Ct. 1368, 62 L.Ed.2d 347 (1981); Klein v. Bower, 421 F.2d 338, 344 (2d Cir.1970), Keys v. Leopold, 241 N.Y. 189, 149 N.E. 828 (1925). Without citing any authority supporting the existence of such a requirement, the Norrises argue that this doctrine should not apply because they did not have a legal claim against both Cooper and Twining. We disagree with their factual premise. Plaintiffs had a legal claim against Cooper, which they asserted in the arbitration proceeding, and, had they acted before the statute of limitations had run and before the arbitrator decided the issue, a legal claim against Twining for tortious interference.
 
 
 26
 Finally, defendants cross-appeal from the district court's denial of their request for sanctions under Fed.R.Civ.P. 11. Under Rule 11 sanctions must be awarded when a competent attorney could not have formed a belief after reasonable inquiry that the claims were "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." This objective inquiry does not require a finding of bad faith. Eastway Construction Corp. v. New York, 762 F.2d 243, 254 (2d Cir.1985). While defendants argue that sanctions should be imposed because plaintiffs' claims had been clearly decided in the arbitration proceeding, our decision to award sanctions rests on even firmer ground.[6] As we have shown, the Norrises' claims were time barred. It is patently clear that the Norrises had absolutely no chance of success under existing precedents, and no reasonable argument has been advanced to extend, modify or reverse the law as it stands. In such a case, Rule 11 has been violated. Eastway, supra. We therefore remand the case to the district court to exercise its "broad discretion in fashioning sanctions." Id.
 
 
 27
 Affirmed in part, remanded for further proceedings.
 
 
 
 [1]
 We do not reach defendants' additional claim that Twining (U.S.A.) should be dismissed as a defendant because plaintiffs failed to allege that it had committed any improper acts and because it was not subject to the jurisdiction of the district court in New York
 
 
 [2]
 Under the agreement Norris would receive 100 percent of the annual after-tax operating profits for 1970, 50 percent of the profits between January 1, 1971, and December 31, 1975, and 25 percent thereafter. The agreement and its amendments set forth the method of calculating "after-tax operating profits"
 
 
 [3]
 An $84,324.25 payment for profits from the first quarter of 1980 had also been included in the original award, but that portion of the award was later removed by the arbitrator
 
 
 [4]
 The Norrises concede that collateral estoppel applies to issues adjudicated in arbitration where the arbitration award has been entered as a judgment, Ufheil Construction Co. v. Town of New Windsor, 478 F.Supp. 766, 768 (S.D.N.Y.1979), aff'd, 636 F.2d 1204 (2d Cir.1980); American Insurance Co. v. Messinger, 43 N.Y.2d 184, 189-90, 401 N.Y.S.2d 36, 39, 371 N.E.2d 798 (1977), and that the parties need not be identical in both actions, Lowell v. Twin Disc, Inc., 527 F.2d 767, 771 (2d Cir.1975); Ritchie v. Landau, 475 F.2d 151, 155 (2d Cir.1973); B.R. DeWitt, Inc. v. Hall, 19 N.Y.2d 141, 214 N.Y.S.2d 595, 225 N.E.2d 195 (1967) (referring to the concept of mutuality as a "dead letter"). The latter concession answers plaintiffs' argument that collateral estoppel should not apply here because defendants were not subject to the jurisdiction of the arbitration proceeding. As long as the issue was identical in the prior action, the parties need not have been the same
 
 
 [5]
 We need not reach defendants' claim that a three-year statute of limitations should apply to plaintiffs' fiduciary duty and unjust enrichment claims because they merely restate the tortious interference claim. See, e.g., Brick v. Cohn-Hall-Marx Co., 276 N.Y. 259, 264, 11 N.E.2d 902, 904 (1937) ("in applying the Statute of Limitations ... [New York courts] look for the reality and the essence of the action and not its mere name."). Plaintiffs' claims are time barred under either view
 
 
 [6]
 Sanctions may be awarded because plaintiffs' claims are time barred even though the district court never reached the time bar issue. As we have previously noted, the mandatory language of Rule 11 supports "a broadened scope of review by the Court of Appeals. Where the only question on appeal becomes whether, in fact, a pleading was groundless, we are in as good a position to determine the answer and, thus, we need not defer to the lower court's opinion." Eastway, 762 F.2d at 254 n. 7. Compare Disilvestro v. United States, 767 F.2d 30, 32 (2d Cir.1985) (per curiam) (applying an abuse of discretion standard in reviewing district court's decision to impose sanctions because the action constituted "bad faith and vexatious litigation."), cert. denied, --- U.S. ---, 106 S.Ct. 400, 88 L.Ed.2d 352 (1985). Similarly, we are not bound by the district court's determination of how best to dispose of the case and therefore may make our own examination of the pleadings to decide whether they were, in fact, groundless