533 F.2d 387
 In the Matter of ST. CLOUD TOOL & DIE CO., Bankrupt.
WHITTAKER CORPORATION, JUSTER STEEL DIVISION, Appellant,
v.
ST. CLOUD NATIONAL BANK AND TRUST CO. and Richard P.
Pearson, Trustee, Appellees.
 No. 75-1465.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 10, 1976.
Decided April 8, 1976.
 
 Walter Shapero, Bromberg, Robinson, Shapero & Cohn, Southfield, Mich., for appellant.
 Thomas J. Murphy, St. Cloud, Minn., for appellee Richard P. Pearson, Trustee.
 James W. Hoolihan, St. Cloud, Minn., and Jerome B. Pederson, Minneapolis, Minn., for appellee St. Cloud Nat. Bank and Trust Co.
 Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and VAN PELT, Senior District Judge.*
 BRIGHT, Circuit Judge.
 
 
 1
 The appellant (Whittaker Corporation, Juster Steel Division, hereinafter "Juster Steel"), brought a petition in the bankruptcy court administering the estate of St. Cloud Tool & Die Company (Bankrupt), seeking a marshaling of assets and collateral to require superior lien creditor, St. Cloud National Bank (Bank), for satisfaction of its secured debt, to look to property of the bankrupt other than that on which Juster Steel claimed a security interest junior to that of the Bank. A hearing was held on Juster Steel's claims and Bankruptcy Judge John J. Connelly determined that Juster Steel's claim as a creditor should be allowed only as an unsecured claim, thereby denying Juster Steel's request for marshaling. The bankruptcy judge further noted that his order was without prejudice to the right of appellant Juster Steel to seek relief in any other court if it so chooses. Juster Steel appealed this ruling to the district court for the District of Minnesota. The district court (Chief Judge Edward J. Devitt) affirmed and Juster Steel brings this timely appeal. The record establishes that the decisions in the district court and the bankruptcy court were proper, and we affirm.
 
 
 2
 The parties have argued a number of issues neither discussed nor reached by the bankruptcy court and we find it unnecessary to discuss these contentions in this opinion. Rather, we affirm on the reasons advanced by the bankruptcy court.
 
 
 3
 The bankruptcy judge advanced two reasons for his determination: (1) that the bankruptcy court had already released the funds arising from the bankrupt's property on which Juster Steel claimed a lien; and (2) that Juster Steel for a period of two years made no attempt to claim a security interest in those funds which have been held by the Bank. We construe these comments as rejecting marshaling on the ground that the bankruptcy court had lost jurisdiction over the property or funds on which Juster Steel now claims a lien and that the bankruptcy court had properly abandoned to the Bank the bankrupt's interest in the property in question since Juster Steel waited nearly two years before coming forward with its alleged secured claim and request for marshaling.
 
 
 4
 We turn to a brief examination of the record. St. Cloud Tool & Die Company (Bankrupt), located at St. Cloud, Minnesota, designed and manufactured machine tools. The Bank possessed a perfected security interest in all of the Bankrupt's inventory, contract rights, and accounts receivable. This security agreement was executed on April 6, 1971.
 
 
 5
 Juster Steel, a steel supplier to the Bankrupt, had obtained a security interest in the contract rights of two machines; one machine under manufacture to Chaparral Industries, Inc., and a second machine manufactured for Scorpion, Inc.[1] This security agreement was dated February 8, 1972.
 
 
 6
 On March 29, 1972, the Bank demanded payment of its notes totaling $72,000. The Bankrupt could not respond. A few days later the Bank brought proceedings in state court to replevin all its collateral located on the Bankrupt's premises. The state court issued an order restraining the proceedings pending a determination of the status of wage claims of Bankrupt's employees. Thereafter, on April 16, 1972, the Bank and attorneys for the employees agreed to a dissolution of the restraining order, thus allowing the Bank to sell the unfinished machine to Chaparral for $41,600. These funds were deposited in a special account with the Bank pending final determination of priority and subject to the intervening bankruptcy proceedings.
 
 
 7
 In the meantime on April 7, 1972, the Bankrupt had filed a petition under Chapter XI of the Bankruptcy Act. On April 19, 1972, the bankruptcy judge, although enjoining further suits against the Bankrupt, permitted the Bank to sell other collateral and deposit the funds received from that collateral in a special account pending further order of the court. On August 1, 1972, the bankruptcy judge converted the Chapter XI proceeding into a straight bankruptcy.
 
 
 8
 During the pendency of these proceedings, Juster Steel filed a general and unsecured creditor's claim for $38,697.73, on May 1, 1972. After the Chapter XI proceeding had been converted into a straight bankruptcy, Juster Steel filed an amended unliquidated claim on August 7, 1972, for a "total possible amount" of $38,697.73, and attached its copy of the security agreement referring to the Chaparral account. Juster Steel did nothing more at this time or for nearly two years to pursue its security interest.
 
 
 9
 On September 28, 1973, the bankruptcy court entered an order in response to the Bank's claim for reclamation of property. That order recited, in relevant part:
 
 
 10
 NOW, THEREFORE, IT IS ORDERED that the sum of $64,404.82 held by St. Cloud National Bank & Trust Co. of St. Cloud, Minnesota, the proceeds of the sale of certain personal property under its security agreement, be, and the same hereby are released to the St. Cloud National Bank & Trust Co., and it is ordered and determined that the trustee in bankruptcy herein has and claims no interest in said fund.IT IS FURTHER ORDERED that as to the balance of its secured claim, pursuant to the stipulation under which certain personal property of the estate in which the secured creditor claimed a security interest, was sold, await the completion of administration and the filing of an order for disbursement, upon a review and allowance of all the secured claims on file herein.
 
 
 11
 The trustee thereafter filed an objection to Juster Steel's secured claim, noting that the Chaparral Industries contract (and the Scorpion contract) were subject to the Bank's prior lien. As noted above, the Chaparral machine had been sold, the proceeds turned over to the Bank, and the trustee had relinquished his claim to the proceeds. On June 12, 1974, Juster filed a complaint seeking a marshaling of assets and collateral. The bankruptcy court allowed Juster Steel's claim only as an unsecured claim and in effect denied the marshaling request.
 
 
 12
 We hold that the bankruptcy court acted properly. The collateral on which Juster Steel claimed a lien and upon which the marshaling request was made had already been sold and the trustee had abandoned any claim to that property or the proceeds. Thus, the bankruptcy court had lost jurisdiction to adjudicate conflicting claims of secured creditors to such collateral. See 2 Collier, Bankruptcy P 23.05(5) (14th Ed. 1975). The order of September 28, 1973, releasing the proceeds of the Chaparral collateral to the Bank had become final under Rules 802(a) and 803 of the Rules of Bankruptcy Procedure.[2]
 
 
 13
 Although Juster Steel did not receive notice of that order, it is not relieved from the application of Rules 802 and 803 for "it is incumbent upon creditors to follow the record of the administration of the bankruptcy estate and discover for themselves orders which they may want to challenge." In re General Insecticide Co., 403 F.2d 629, 630 (2d Cir. 1968).
 
 
 14
 Whether viewed as a release of the proceeds in the special account or as a judicial approval of abandonment, the September 28 order of the bankruptcy court allowed the Bank to take unqualified possession of the proceeds resulting from the sale of the Chaparral machine. Thus, Whittaker's June 12, 1974, petition asked the bankruptcy court to marshal an asset which the court neither actually or constructively possessed. See 2 Collier, Bankruptcy P 23.05(2), (3) (14th Ed. 1975). The bankruptcy court is without jurisdiction to adjudicate controversies over property in the possession of an adverse party (in this case the Bank) without the consent of such party. Harrison v. Chamberlin, 271 U.S. 191, 193, 46 S.Ct. 467, 468, 70 L.Ed. 897, 899 (1926); 2 Collier, Bankruptcy P 23.04(2), P 23.06(1) (14th Ed. 1975). No such consent was or has been given by the Bank with respect to Whittaker's request that the bankruptcy court marshal collateral in the Bank's possession.
 
 
 15
 We think it well also to note that marshaling under the circumstances of this case would seriously disrupt existing rights of parties which accrued in prior proceedings, while Juster Steel "slept on its rights." For example, the employees of the Bankrupt consented to the dismissal of the state court's injunctive order upon an assumption that sufficient assets existed in the estate to satisfy the Bank's secured claims and the employees' priority claims. Moreover, the Bank, on the assumption that it had recovered a major portion of its secured indebtedness from the sale of the machine to Chaparral, surrendered some of its collateral to the trustee. It is clear that the doctrine of marshaling may not be invoked where prejudice will accrue to other parties. See In re Beacon Distributors, 441 F.2d 547, 548 (1st Cir. 1971); 55 C.J.S. Marshaling §§ 1, 3-5.
 
 
 16
 Furthermore, the doctrine of marshaling requires that a creditor act promptly so as not to cause others to sustain prejudice from inaction:
 
 
 17
 The invocation of the doctrine of marshaling is dependent upon a reasonable assertion of right by the junior lienholder. By failing to raise the question of marshaling promptly, the right to invoke the doctrine may be waived, or lost through laches. (53 Am.Jur.2d Marshaling Assets § 15.)[3]
 
 
 18
 Thus, we conclude that the bankruptcy court committed no error in allowing Juster Steel's claim only as an unsecured claim.
 
 
 19
 The district court properly approved of the ruling of the bankruptcy judge.
 
 
 20
 Affirmed.
 
 
 
 *
 ROBERT VAN PELT, United States Senior District Judge, District of Nebraska, sitting by designation
 
 
 [1]
 The value of the Scorpion contract is nominal and does not materially bear upon the rights of the parties herein
 
 
 [2]
 Rule 802(a) reads:
 The notice of appeal shall be filed with the referee within 10 days of the date of the entry of the judgment or order appealed from. If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 10 days of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this rule, whichever period last expires.
 Rule 803 reads:
 Unless a notice of appeal is filed as prescribed by Rules 801 and 802, the judgment or order of the referee shall become final.
 Although the Rules of Bankruptcy Procedure did not become effective until October 1, 1973, they apply to proceedings pending on that date. Rules 802 and 803 did not alter the prior law, 11 U.S.C. § 67(c), in any way material to this litigation.
 
 
 [3]
 The bankruptcy court noted that "Juster Steel Company for a period of two years made no attempt or effort to make a claim to the security or the proceeds from the sale thereof."