In re W. T. GRANT COMPANY, Bankrupt.

David COSOFF, Helen Finkelstein, Eileen McGinnis, Jay Miller, Appellants,

v.

Charles G. RODMAN, Trustee-Appellee.

No. 81 Civ. 5996 (KTD).

United States District Court, S. D. New York.

March 15, 1982.

Davis, Polk & Wardwell, New York City, for appellee Morgan Guaranty Trust Co. of New York, Individually and as Agent; Philip C. Potter, Jr., Ogden N. Lewis, Denny Chin, New York City, of counsel.

Douglas F. Eaton, New York City, for appellants Eileen McGinnis and Jay Miller; Joanne Clifford Eaton, New York City, of counsel.

Weil, Gotshal & Manges, New York City, for trustee; Harvey Miller, Richard Krasnow, New York City, of counsel.

Brewer & Soeiro, New York City, for bondholders; Bradley R. Brewer, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

David Cosoff, Helen Finkelstein, Eileen McGinnis and Jay Miller appeal pursuant to Bankr.R.P. 801 from Bankruptcy Judge Galgay's order approving a settlement between banks and subordinated debentureholders of bankruptcy W.T. Grant Company ("Grant"). The settlement offers debentureholders 19 cents on the dollar.[1] Appellants argue that Judge Galgay committed errors of law and fact in approving the settlement and in providing notice to debentureholders. It is unnecessary, however, to address these arguments. Appellants' claims were litigated to a final judgment in bankruptcy court two years ago, and are thus *res judicata.*

This matter arises out of the attempt of Grant's bank creditors to collect some $657,000,000 by enforcing liens and guarantees after the company was adjudicated a bankrupt on April 13, 1976. Appellee Charles G. Rodman, bankruptcy trustee, challenged the validity of the liens and guarantees on the ground that the banks had obtained their sureties by dominating Grant management to the prejudice of the company in the eighteen months before bankruptcy. Chase Manhattan Bank, N.A., and Citibank, N.A., had been both Grant lenders and indenture trustees for the debentureholders[2] during

---

1. The settlement actually provides for a gross payment of 21 cents on the dollar; it provides that no more than 2 cents on the dollar will go towards attorneys' fees, leaving debentureholders with a net settlement of at least 19 cents on the dollar.

2. There are actually two different groups of debentureholders in this proceeding: those holding 4.75 percent subordinated debentures totalling $92,507,000, and those holding 4 percent subordinated debentures totalling $834,-

000. Citibank was the indenture trustee for the 4-percent debentureholders; Chase Manhattan was the indenture trustee for the 4.75 percent debentureholders until August 14, 1974, when it resigned and was replaced by the United States Trust Company of New York. Appellants here hold only 4.75 percent subordinated debentures. Because I hold that Judge Galgay's 1980 decision is *res judicata* against all subordinated debentureholders, I do not consider appellee's argument that appellants can-

the events in question, so these banks appeared to have a conflict of interest. Rodman argued that under the doctrine of equitable subordination the $94,000,000 in subordinated debentures should be paid in full before the banks received any money from the bankrupt's estate. *See Pepper v. Litton*, 308 U.S. 295, 307–310, 60 S.Ct. 238, 245–246, 84 L.Ed. 281 (1939).

The trustee accumulated about $700,000,000 by liquidating the estate. Some $94,000,000 was set aside to meet the debentureholders' claims in case they won; otherwise the money would go to the banks as senior creditors. The trustee litigated against the banks for about one year. He deposed more than twenty-five witnesses and took more than 10,000 pages of testimony. Settlement negotiations began in late 1977 or early 1978. The trustee recommended a settlement for 14 cents on the dollar, and after five days of hearings in May, 1979, Judge Galgay approved the settlement on February 20, 1980. *In re W.T. Grant*, 4 B.R. 53 (Bkrtcy.S.D.N.Y.1980). The settlement provided that debentureholders would accept a cash payment of 14 cents on the dollar by tendering their securities and waiving all claims against the banks.[3] Funds would be disbursed out of the $94,000,000 reserve fund only after 90 percent of the debentureholders (or such lower percentage as the banks would choose) had accepted the offer. The trustee would retain funds sufficient to cover 100 percent of the principal and accrued interest on claims of debentureholders who refused the settlement. The settlement offer would not be distributed to the debentureholders, and no money would be paid out, until appeals of the settlement were exhausted.

Eleven debentureholders appealed from Judge Galgay's order to the district court. Cosoff, Finkelstein, McGinnis and Miller were not among them. Cosoff and Finkelstein had objected to the settlement in bankruptcy court and had been represented

by their present attorney Bradley R. Brewer. Brewer participated in the appeal of Judge Galgay's order, but in his brief he admits that he did not appeal on behalf of Cosoff and Finkelstein because he did not think it necessary to protect their rights.

Negotiations continued while the appeal was pending, and the district court issued a limited remand so that Judge Galgay could supervise the negotiations. On April 1, 1981, the parties reached a compromise: the banks raised their settlement offer to 19 cents on the dollar. In return, the objectants agreed to dismiss their appeal with prejudice. Lawyers for the banks worried that parties not present might try to block the settlement, but Harvey Miller, counsel to the trustee, observed that withdrawal of the appeal would make Judge Galgay's decision final and allow the parties to disseminate the settlement offer.

Mr. Brewer participated in the settlement conference in Judge Galgay's chambers, but he was unable to state for the record exactly who he was representing. He made no effort to contact his clients to intervene in the appeal or otherwise keep it alive. Mr. Brewer knew of the 19-cent settlement on April 1, 1981, but he received no objection from any client to the offer by June 8, when he was informed that all objections to the new settlement had to be submitted to the bankruptcy court in writing by June 12. Mr. Brewer submitted no written objections because he had received none by that date. Judge Galgay approved the 19-cent settlement on June 16. Mr. Brewer appeared at the hearing on June 16, but he was still uncertain as to who he represented. Only Mr. Cosoff had retained him to oppose the settlement, and Mr. Cosoff had acted on June 13, one day after the deadline for submitting objections. Judge Galgay gave Mr. Brewer a limited time to argue in court against the settlement. Mr. Brewer chose to object only to the adequacy of notice—he claimed the June 8–12 interval was too little time, and he claimed the notice of settle-

---

not affect the validity of the settlement on behalf of the 4-percent holders.

**3.** The first settlement provided for a gross payment of 15 cents on the dollar, with no more than 1 cent going towards attorneys' fees.

ment was confusing—and to attorneys' fees incorporated in the settlement.[4]

The settlement offer was distributed, and about $79,300,000 or 80 percent of the debentures have been exchanged in acceptance of the settlement. The banks approved disbursement of cash pursuant to the settlement.[5] It is this executed settlement[6] that appellants, again represented by Brewer,[7] seek to undo.

Two years after the bankruptcy court approved the 14-cent settlement, appellants here raise only the same claims that were litigated and lost before Judge Galgay. Judge Galgay's decision was *res judicata. Katchen v. Landy,* 382 U.S. 323, 334, 86 S.Ct. 467, 475, 15 L.Ed.2d 391 (1966). Even though the bankruptcy proceeding continued, appellants could attack the decision only by direct appeal. *In re Abilene Flour Mills Co.,* 439 F.2d 937, 939 (10th Cir. 1971); *Kimm v. Cox,* 130 F.2d 721, 736–37 (8th Cir. 1942). This they failed to do. Therefore, they may not litigate their claims a second time through this appeal.

Appellants argue that Judge Galgay's decision *was* challenged on appeal by the original objectants. They reason that because they were not parties to the first appeal, the dismissal of the appeal does not bind them and in some way reopens Judge Galgay's decision to their own attack. This argument mistakes the effect of *res judicata* in bankruptcy.

A bankruptcy is essentially an *in rem* proceeding of an equitable nature. *Local Loan Co. v. Hunt,* 292 U.S. 234, 241, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934); Moore, *Res Judicata and Collateral Estoppel in Bankruptcy,* 68 Yale L.J. 1, 1 (1958); 1 *Collier on Bankruptcy,* ¶ 2.09, at 173 & n.3 (J. Moore & L. King 14th ed. 1974). The bankruptcy court adjudicates interests in the *res,* which is the bankrupt's estate in general and the $94,000,000 reserve fund in this particular case. A judgment *in rem* binds all parties in the world who have notice of the proceeding as to their interests in the *res.*[8] *Restatement of Judgments,* Section 73(1) (1942); *Restatement (Second) of Judgments,* Section 73(a) & Comment (a) at 192 (Tent. Draft No. 1 1973).

In *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), the bankruptcy court approved over creditor Gottlieb's protests a reorganization plan which required Gottlieb and other creditors to give up their claims against guarantors of the debtor. Gottlieb did not appeal the bankruptcy court's decision that it had jurisdiction to bind Gottlieb as against the guarantor, and the Supreme Court held the decision *res judicata* against Gottlieb when he sued the guarantor in state court.

In *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), bondholders with notice of a municipal bankruptcy proceeding but who never participated in the proceeding

---

**4.** Appellants arguably failed to preserve their claims for appeal by not properly articulating or presenting them in the bankruptcy court. *In re REA Holding Corp.,* 2 B.R. 733, 737 (S.D.N. Y.1980); *In re Bildisco,* 11 B.R. 1019, 1020 (D.N.J.1981). Appellee in turn first presented his *res judicata* argument in this appeal. However, neither side contends here that the other has waived a claim or defense by failing to present it to the bankruptcy court. Omission of *res judicata* arguments below is understandable: Mr. Brewer's failure to comply with the bankruptcy court's procedures deprived the trustee of notice that a *res judicata* defense would be necessary. For this reason, and in the absence of any waiver argument by appellants, I think appellee's *res judicata* argument is properly before this Court. To rule otherwise would reward appellants for their failure to comply with procedures below.

**5.** Appellants tried and failed to obtain a stay of the cash disbursement. The banks guaranteed return of the cash should this appeal go against them.

**6.** *Cf.* Bankr.R.P. 805 (Unless an order approving sale of property is stayed pending appeal, a good faith purchaser of the property shall not be affected by reversal or modification of the order).

**7.** The notice of appeal was filed by Mr. Brewer. Mr. Eaton later appeared as co-counsel for appellants.

**8.** The appellants do not claim that they lacked notice of the bankruptcy proceeding.

challenged the bankruptcy court's adjudication after the Supreme Court, in another case, held the municipal bankruptcy law unconstitutional. The bondholders argued the bankruptcy court lacked subject matter jurisdiction. Even though the bondholders never participated in the proceeding, the Court held the decision of the bankruptcy court *res judicata*. *Id.* at 375, 60 S.Ct. at 319. *See* Moore, *supra*, 68 Yale L.J. at 7–10.

 The cases as analyzed above indicate that a creditor with notice may not contest a decision of the bankruptcy court once that decision has become final, whether or not the creditor appeared before the bankruptcy judge. It would seem to follow that a creditor may not contest a decision of the bankruptcy court on appeal after a first appeal has been withdrawn and the time to join in that appeal has expired. *See* Bankr. R.P. 802(a).[9] It is not the capitulation of the original appellants which binds the appellants here. *See Robinson v. First Nat'l City Bank*, 482 F.Supp. 92 (S.D.N.Y.1979) (litigating creditors in bankruptcy are not class representatives and do not bind fellow creditors). It is instead appellants' own failure to join in the original appeal.

 To allow appellants a second chance at review would permit yet a third appeal should these appellants settle with the banks. A decision permitting such a result would disserve the goal of finality in litigation which is the purpose of *res judicata*. *See Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (where five of six plain- tiffs dismissed by the same judge won on appeal because of an intervening change in law, the district court decision remained *res judicata* against the non-appealing plaintiff). Moreover, appellants present no good reason for relief from *res judicata*. The first appeal was not a sham; no procedural inequity is apparent.[10] Nor will any substantive injustice result from this application of *res judicata*. The settlement appellants seek so hard to upset explicitly preserves to them and all other dissenting debentureholders both their cause of action against the banks and a reserve fund from which to collect. In any event, this appeal is totally devoid of merit. Judge Galgay carefully considered the settlement over six days of hearings, and the opinion of the court, though drawn from the statement of the trustee, contains no error sufficient to constitute an abuse of discretion.

The order of the bankruptcy court is affirmed and costs will be assessed against the appellants.

SO ORDERED.

---

9. *See* 9 *Moore's Federal Practice*, ¶ 204.11[4] at 4·54–55 (J. Moore, B. Ward & J. Lucas 2d ed. 1980) (though parties may have identical interests, one who appeals under Fed.R.App.P. 4(a) does not stand as surrogate for one who does not, and those failing to appeal may not challenge judgment of the trial court). Bankr.R.P. 802(a) is modeled after Fed.R.App. 4(a). Bankr.R.P. 802 advisory committee note.

10. Appellants complain that they received no notice of the original appellants' decision to withdraw their appeal with prejudice. This argument contains neither legal nor factual merit. The present appellants had knowledge of the original order and could have joined in the original appeal. Withdrawal of the appeal occurred long after the appellants' time to join the appeal had lapsed. It is settled law that appellants were owed no notice of the order from which appeal was taken. *See In re General Insecticide Co.*, 403 F.2d 629, 630 (2d Cir. 1968); *In re St. Cloud Tool & Die Co.*, 533 F.2d 387, 390 (8th Cir. 1976). It is difficult to see how appellants were owed notice of a withdrawal of an appeal if they were not owed notice of the original order. Finally, Mr. Brewer, who admits in his brief that he represented appellants before the bankruptcy court, *did* have notice of the decision to withdraw the first appeal.