790 F.2d 1107
 Bankr. L. Rep. P 71,144, 1 UCC Rep.Serv.2d 543
Richard L. SMITH, Appellant,
v.
DAIRYMEN, INC., and The Farm Loan Corporation, Defendants,
and
United States of America, acting through Farmers Home Adm.,
of the USDA, United Virginia Bank, and First
National Bank of Lexington, Appellees.
 No. 85-1911.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 5, 1986.
Decided May 14, 1986.
 
 Michael A. Cleary (M. Caldwell Butler; Woods, Rogers & Hazelgrove, Roanoke, Va., on brief), for appellant.
 Bruce W. White, U.S. Dept. of Agriculture, Washington, D.C. (Jean B. Weld, Asst. U.S. Atty., Roanoke, Va., on brief), for appellee U.S.
 William O. Roberts, Jr., Lexington, Va., on brief, for appellee United Virginia Bank.
 Before WINTER, Chief Judge, CHAPMAN, Circuit Judge, and HOUCK, United States District Judge for the District of South Carolina, sitting by designation.
 HARRISON L. WINTER, Chief Judge:
 
 
 1
 The principal question presented by this appeal is whether the security interest of a creditor in the debtor's livestock and other farm products extends to farm products produced after a Chapter 11 bankruptcy case was begun. A subsidiary question is one of the district court's appellate bankruptcy jurisdiction.
 
 
 2
 The bankruptcy court held that the United States, acting through the Farmers Home Administration (FHA) and United Virginia Bank (United), had pre-petition security interests, under various security instruments, in milk produced by cows belonging to the debtors, Richard L. Smith and his wife, prior to the filing of a Chapter 11 bankruptcy case. The court decided, however, that that security interest, by virtue of 11 U.S.C. Sec. 552(a), did not extend to milk produced post-petition. Although only FHA filed a notice of appeal to the district court, it exercised jurisdiction over the entire case. It ruled that FHA and United both had security interests in milk produced in the debtors' dairy farming operation and that both security interests, by virtue of 11 U.S.C. Sec. 552(b), extended to milk produced after the bankruptcy case commenced.
 
 
 3
 The debtor has appealed and we affirm the district court with respect to FHA, but we think that the district court lacked jurisdiction to adjudicate United's rights, and so we reverse its judgment for United.
 
 I.
 
 4
 Smith and his wife owned and operated a dairy farm in Rockbridge County, Virginia. Their principal source of income is the sale of milk to Dairymen, Inc. Prior to commencement of the Chapter 11 proceeding, they had directed Dairymen to pay monthly certain sums as debt service to FHA, United and other creditors out of funds due Smith for the purchase of milk.
 
 
 5
 At the time that the Smiths filed under Chapter 11, monies were owed them by Dairymen for milk purchased before the bankruptcy filing occurred, and, as debtors in possession, they continued to sell milk to Dairymen after the bankruptcy filing occurred. After the bankruptcy filing, they sought to direct Dairymen to disregard their previous instructions to pay monthly sums to their creditors, but Dairymen and the creditors resisted and this adversary action ensued.
 
 
 6
 The bankruptcy court ruled that FHA and United held valid pre-petition security interests in the milk produced on the Smiths' farm and in the proceeds of the sale of milk to Dairymen, but it concluded that by virtue of 11 U.S.C. Sec. 552(a), neither had a security interest in the milk produced and sold post-petition. Only FHA appealed to the district court, but it ruled that both FHA and United had a valid pre-petition interest in the milk and proceeds of sale and that by virtue of 11 U.S.C. Sec. 552(b), both had a valid post-petition interest in the milk and proceeds of sale generated after the petition in bankruptcy was filed.
 
 
 7
 Before us, there is no dispute that FHA and United had a valid security interest in the milk produced and the proceeds derived from its sale. The dispute arises from the question of whether Sec. 552(a) or 552(b) governs the rights of the parties with respect to milk produced and sold after the filing of the petition in bankruptcy. A second question that we must address is whether the district court had jurisdiction to adjudicate the rights of United, since it failed to appeal from the judgment of the bankruptcy court. We address these questions in inverse order.
 
 II.
 
 8
 We do not think that the district court had jurisdiction to adjudicate the rights of United, and we reverse the judgment as to it.
 
 
 9
 The district court, as the initial appellate forum in this proceeding, would seemingly be without jurisdiction to determine the rights of United, since United, by not filing a notice of appeal to the district court, see Bankr.R. 8001(a), 8002, failed to invoke the court's jurisdiction. Cf. In re LBL Sports Center, Inc., 684 F.2d 410, 412 (6 Cir.1982) (bankruptcy court's judgment becomes final and unappealable if notice of appeal untimely filed); Matter of Ramsey, 612 F.2d 1220, 1221-22 (9 Cir.1980) (untimely filing of notice of appeal deprives district court of jurisdiction to review bankruptcy court's order or judgment). Furthermore, under general principles of appellate procedure and jurisdiction, United should be unable to benefit from the decision obtained by FHA. This generally is true even if the co-parties' rights will be affected equally by resolution of the very same issues. As a leading treatise states:
 
 
 10
 The general principle that a judgment will not be altered on appeal in favor of a party who did not appeal applies as well to cases in which the interests of the party not appealing are aligned with those of the appellant. Thus if co-defendants are held liable below, and one appeals and one does not, the party appealing does not stand as surrogate for the one who does not, and though the judgment be reversed, the party not appealing remains liable, despite the fact that the liability of each depends upon the same legal principles. Indeed the ultimate result is no different than it would be if individual suits had been brought and one had been successful and the other not.
 
 
 11
 9 Moore's Federal Practice p 204.11, at 4-54 to -55 (2d ed. 1980) (citing Cook & Sons Equipment, Inc. v. Killen, 277 F.2d 607, 609 (9 Cir.1960) ("only the parties named in the notice of appeal are brought within the appellate court's jurisdiction.")). The treatise and the case it cites by way of example, however, deal with appeals from the district court to the court of appeals, and not with bankruptcy proceedings.
 
 
 12
 There appears to be little authority on this point in the bankruptcy context, and it is in conflict. In In re Credit Industrial Corp., 366 F.2d 402 (2 Cir.1966), only one of a number of creditors, along with the trustees in bankruptcy, petitioned for review in the district court of the bankruptcy referee's[1] order. The district court affirmed the referee's order, and all of the creditors appealed to the court of appeals. The appeals court, in denying the bankruptcy trustee's motion to dismiss the appeals of the creditors who had not earlier challenged the referee's order, held that these creditors should be allowed to benefit from the courts' holding in favor of the one creditor who had appealed. The court reasoned that, due to this creditor's timely petition for review, the referee's order was properly before the court and that to allow the decision on the propriety of the order to inure only to the benefit of one creditor "would be clearly inequitable and contrary to the well-established policy of like treatment for like creditors."[2] Id. at 407.
 
 
 13
 A more recent case from the Second Circuit, however, favors debtor's position here. In In re W.T. Grant Co., 20 B.R. 186 (S.D.N.Y.1982), all creditors had filed timely notices of appeal to the district court, challenging the terms of a settlement approved by the bankruptcy court, but certain creditors withdrew their appeals. These creditors later tried to appeal but the district court ruled that the earlier order was res judicata as to them because of their failure to pursue their initial appeal. The court stated: "[A] creditor may not contest a decision of the bankruptcy court on appeal after a first appeal has been withdrawn and the time to join in that appeal has expired." Id. at 190. Although the Second Circuit, 699 F.2d 599, reversed on this point because of the peculiar facts of the case (the settlement had been renegotiated, a new settlement superseding the old had been approved by the bankruptcy court, and the creditors in question had timely appealed from the new order), the court did state the following:
 
 
 14
 We have little doubt as to the correctness of Judge Duffy's observation about res judicata in the usual case or even in most cases of the approval of settlements in bankruptcy. An appeal by one creditor will not save the situation for another if the first withdraws his appeal--if for no other reason than that the time for the other to take an appeal will generally have expired.
 
 
 15
 Id. at 608 (citing 9 Moore's Federal Practice p 204.11.
 
 
 16
 A recent decision of the First Circuit, In re Abdallah, 778 F.2d 75, 77 (1 Cir.1985), held that the filing of a notice of appeal is mandatory to invoke the appellate jurisdiction of the district court and the failure to do so "deprives the district court of jurisdiction to review the bankruptcy court's order." The First Circuit held that jurisdiction was lacking as to the parties who failed to file timely notices of appeal, despite the fact that one party similarly situated had filed a timely notice, thus properly placing the bankruptcy court's judgment before the district court.
 
 
 17
 We think that Grant and Abdallah state the correct rule. The rule they establish is consistent with Bankruptcy Rule 8001 which requires "[a]n appeal from a final judgment, order, or decree of a bankruptcy judge to a district court ... [to be] taken by filing a notice of appeal with the clerk of the bankruptcy court" within the time prescribed by law, and, significantly, provides that "[e]ach appellant shall file a sufficient number of copies of the notice of appeal to enable the clerk to comply promptly with Rule 8004," Bankr.R. 8001(a) (emphasis added), by "serv[ing] notice of the filing of a notice of appeal by mailing a copy to counsel of record of each party other than the appellant...." Bankr. 8004.[3] We think this language of the rule is an indication that, absent exceptional circumstances not present here, only a party who files a notice of appeal properly invokes the appellate jurisdiction of the district court, and we so hold. It follows that United, not having filed a notice of appeal, was not before the district court and the court had no jurisdiction to modify the bankruptcy court's judgment against it.
 
 III.
 
 18
 We set forth the language of Sec. 552 in its entirety in the margin.[4] Subsection (a) establishes a general rule, and subsection (b) an exception. The relationship and purpose of the two subsections are explained in the "Historical and Revision Notes," following 11 U.S.C. Sec. 552 (based upon the Notes of Committee on the Judiciary, Senate Report No. 95-989, U.S.Code Cong. & Admin.News 1978, p. 5787):
 
 
 19
 Under the Uniform Commercial Code, article 9, creditors may take security interests in after-acquired property. Section 552 governs the effect of such a prepetition security interest in postpetition property. It applies to all security interests as defined in section 101(37) of the bankruptcy code [this title] not only to U.C.C. security interests.
 
 
 20
 As a general rule, if a security agreement is entered into before the commencement of the case, then property that the estate acquires is not subject to the security interest created by a provision in the security agreement extending the security interest to after-acquired property. Subsection (b) provides an important exception consistent with the Uniform Commercial Code. If the security agreement extends to proceeds, product, offspring, rents, or profits of the property in question, then the proceeds would continue to be subject to the security interest pursuant to the terms of the security agreement and provisions of applicable law, except to the extent that where the estate acquires the proceeds at the expense of other creditors holding unsecured claims, the expenditure resulted in an improvement in the position of the secured party.
 
 
 21
 ....
 
 
 22
 The milk produced post-petition on the debtor's farm is, as the bankruptcy court ruled, property acquired by the estate after the commencement of the case within the meaning of subsection (a). The determinative question, however, is whether, notwithstanding the literal application of subsection (a), the milk falls within the exception recognized by subsection (b). In order to qualify as an exception, these conditions must be met: (a) there must be a pre-petition security agreement, (b) the security agreement by its terms must extend to the debtor's pre-petition property and to proceeds, product, offspring, etc. of such property, and (c) applicable non-bankruptcy law, i.e., state law, must permit the security agreement to extend to such after-acquired property. If these conditions are met, then the after-acquired property lien will be given effect in bankruptcy "except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise."
 
 
 23
 We think that the conditions of subsection (b) have been met in the instant case. It is not contested before us that FHA had a pre-petition security agreement which expressly created a lien on the milk produced on the debtor's farm. Virginia, with certain exceptions not pertinent here, recognizes a security interest in after-acquired property, Va.Code Sec. 8.9-204, provided the security agreement purports to create the interest and is properly recorded, Va.Code Sec. 8.9-203, 8.9-303 and 8.9-304. Not only did the security agreement expressly create a lien on the milk produced by the debtor's cows, it was properly recorded. Indeed the debtor does not contest the validity and perfection of the security agreement. Therefore, subject only to equitable intervention after notice and hearing later discussed, we think that the district court correctly concluded that subsection (b) required recognition of FHA's lien in the milk produced post-petition and the monies derived from its sale.
 
 
 24
 Our conclusion is in accord with the decisions in In re Nielsen, 48 B.R. 274 (D.N.D.1984); Matter of Hollie, 42 B.R. 111 (Bankr.M.D.Ga.1984); In re Potter, 46 B.R. 536 (Bankr.E.D.Tenn.1985); In re Rankin, 49 B.R. 565 (Bankr.W.D.Mo.1985). In re Lawrence, 41 B.R. 36 (Bankr.D.Minn.1984), on which the debtors primarily rely, is to the contrary, but we do not find it persuasive. The Lawrence court held that the concept of "products" within the meaning of Sec. 552(b) "is a very limited one intended to cover the situation where a creditor holds a security interest in raw materials and after the filing of a bankruptcy petition, the debtor changes their form by converting them into inventory." Id. at 37 (citing 124 Cong.Rec. 11,097-11,098 (Sept. 28, 1978); id. at 17, 414 (Oct. 6, 1978)). While the situation thus described is offered in the legislative history as an example of the application of Sec. 552(b), we do not see that subsection's application to "products" of pre-petition property as strictly limited to such situations. Nevertheless, the Lawrence court, and the debtors in the case before us, concluded that "milk produced post-petition is an asset coming into existence totally after the filing and not intended to be covered by the 552(b) exception." 41 B.R. at 38. The notion that Sec. 552(b) was not intended to apply to such assets is undercut by the language of the statute itself, which extends coverage to "offspring, rents, or profits" derived from property acquired pre-petition, all of which quite clearly are "assets coming into existence totally after the filing." As noted above, Sec. 552(b) permits a security interest in such assets, provided a pre-petition security agreement valid under state law extends to them. Lawrence thus fails to give proper effect to the language of Sec. 552(b); we decline to follow its reasoning and affirm the district court's judgment as to FHA. Contra In re Pigeon, 49 B.R. 657 (Bankr.N.D.1985); In re Jackels, 55 B.R. 67 (Bankr.D.Minn.1985); In re Serbus, 48 B.R. 5 (Bankr.D.Minn.1984).
 
 IV.
 
 25
 The debtor argues that even if we affirm the basic ruling of the district court, we should nevertheless remand the case for a determination of whether the application of subsection (b) should be set aside on equitable grounds. We reject the argument.
 
 
 26
 The record does not reflect that debtor made any contention in the district court that if legal effect was given to subsection (b) there were equitable grounds to mitigate its application.[5] We would therefore be justified in rejecting the contention on the ground that it was not preserved for review on appeal. Moreover, we perceive no equitable factors to be considered. FHA is not oversecured. Its claim is in excess of $370,000 with security valued between $160,000 and $260,000. While there might be equitable considerations in preferring unsecured creditors who furnished feed or other supplies essential to the post-petition production of milk, we were told in oral argument that the monies in contest are net amounts after deduction of the cost of feed. Debtor has not identified in his brief or oral argument any other uncompensated for cost of production.
 
 
 27
 AFFIRMED IN PART AND REVERSED IN PART.
 
 
 
 [1]
 The case was tried before the current Bankruptcy Code was in effect. Review in the district court had been sought pursuant to section 39(c) of the then-current Bankruptcy Act, 11 U.S.C. Sec. 67(c)
 
 
 [2]
 The other creditors had argued that granting the trustees' motion to dismiss their appeals, and thus failing to hold that the trustees' petition for review preserved the rights of all creditors to seek review, would make the trustees guilty of favoring one group of creditors to the detriment of the others. To the extent that this special factor involving the role of the trustees influenced the Second Circuit's decision, Credit Industrial Corp. is distinguishable from our case. It is also distinguishable in that the non-petitioning creditors did file briefs in the district court; United apparently did not do this in our case
 
 
 [3]
 The district court's apparent oversight in granting relief to United, a nonappealing party, may be explained by the fact that Bankruptcy Rule 8001(a) also requires that the notice of appeal filed by an appealing party "contain the names of all the parties to the judgment, order, or decree appealed from." (Although the form for notice of appeal, while including all parties' names in the style of the case, is set up to show rather clearly which parties are actually appealing. See Bankruptcy Form No. 35.) Perhaps for this reason, the style of the case in the district court listed "Dairymen, Inc., et al.," as Appellants, even though FHA was the only creditor challenging the order of the bankruptcy court. This quirk may also have led the district judge to assume that all creditors' rights were to be adjudicated in his court
 It must be noted, however, that the issue as stated on appeal to the district court addressed only the rights of FHA.
 
 
 [4]
 (a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case
 (b) Except as provided in sections 363, 506(c), 544, 545, 547, and 548 of this title, if the debtor and a secured party enter into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.
 Although subsection (b) begins with exceptions to its application, neither party to this appeal claims that any of the exceptions is applicable.
 
 
 [5]
 The opinion of the district court recognized its equitable power to modify Sec. 552(b) but stated that "debtors have forwarded no argument ... for the application of the equity exception in this case."