**In re W.T. GRANT COMPANY, Bankrupt.**

**Charles HOOTEN, Plaintiff,**

v.

**MORGAN GUARANTY TRUST COMPANY OF NEW YORK on its own behalf and as agent for or representative of 25 other "Bank Claimants" in this Proceeding, Defendant.**

**Bankruptcy No. 75 B 1735 (CB).**

United States Bankruptcy Court, S.D. New York.

Feb. 2, 1988.

Weil Gotshal & Manges, New York City, for Successor Trustee; Richard Krasnow, and Jacqueline Taubes, of counsel.

Davis Polk & Wardwell, New York City, for defendant Morgan Guar. Trust Co. of New York; Philip C. Potter, Ogden N. Lewis, and Nanci Snow Bockelie, of counsel.

Brewer & Soeiro, New York City, for plaintiff Charles Hooten; Bradley R. Brewer and Horowitz & Jacobs, New York City, of counsel.

## MEMORANDUM AND DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSING COMPLAINT

CORNELIUS BLACKSHEAR,
Bankruptcy Judge.

A complaint was filed with this court on November 13, 1986 by the law firms of Brewer & Soeiro and Horowitz & Jacobs on behalf of plaintiff Charles Hooten individually and allegedly on behalf of a class of holders of W.T. Grant Company 4¾% Subordinated Debentures ("Subordinated Debenture Holders") who tendered their 4¾% subordinated debentures ("Subordinated Debentures") in acceptance of an offer and settlement ("Amended Offer"). Plaintiff in its complaint challenges the propriety of the Amended Offer alleging that defendant Morgan Guaranty Trust Company of New York, et al. ("Morgan"), through its attorneys, agreed to improper and preferential fee arrangements with certain large Subordinated Debenture Holders, by which those holders stood to recover more than other holders who accepted the settlement. *See* Complaint, § 4–9 and 13. Further, in its complaint, plaintiff alleges that the failure to disclose such "fee arrangements" to accepting Subordinated Debenture Holders constitutes fraud and a breach of fiduciary duty. *Id.* § 10 and 11.

Defendant Morgan petitions this court to dismiss the complaint of Charles Hooten pursuant to Fed.R.Civ.P. 56 for summary judgment on grounds of *res judicata*. Additionally, Morgan demands sanctions pursuant to Bankruptcy Rule 9011 and Fed.R. Civ.P. 11 against plaintiff and seeks to enjoin plaintiff and his counsel from relitigating their claims before this or other courts on their own behalf or on behalf of Subordinated Debenture Holders.

### Facts

This case arises out of the collapse of W.T. Grant Company ("Grant") which filed its petition for bankruptcy on October 2, 1975 and was adjudicated on April 13, 1976. The Grant bankruptcy involved numerous claims, lawsuits and settlements. The factual background leading to this particular proceeding has been set forth at length in a previous opinion of the Bankruptcy Court, the District Court and the Second Circuit. Thus, only pertinent facts will be repeated here. *See generally In re W.T. Grant Co.,* 4 B.R. 53 (Bankr.S.D.N.Y.1980), modified by order dated June 23, 1981, *aff'd,* 20 B.R. 186 (S.D.N.Y.1982), *aff'd,* 699 F.2d 599 (2d Cir.), *cert. denied sub nom., Cosoff v. Rodman,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *Weinberger v. Kendrick,* 91 F.R.D. 494 (S.D.N.Y.1981) *aff'd,* 698 F.2d 61 (2d Cir.1982), *cert. denied sub nom., Lewy v. Weinberger,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983).

Since the inception of the aborted Chapter XI, defendant Morgan, on behalf of itself and as agent for twenty-five (25) bank creditors of Grant (the "Bank Claimants"), has asserted that the bank claims constitute senior indebtedness pursuant to the provisions of Grant Indentures and Subordinated Debentures and further that the Subordinated Debenture Holders' right of payment from the assets of the bank-

rupt estate is subject to prior payment in full of all senior indebtedness. Charles Rodman, acting as Trustee, and later joined by United States Trust Company as Indenture Trustee of the Subordinated Debentures, disputed the status and priority of the claims of the Bank Claimants. Such dispute led to a series of negotiations culminating first in a proposed offer of compromise and settlement (the "Original Offer") which provided that the Subordinated Debenture Holders of Grant would receive 14% of the principal amount of their Subordinated Debentures, 4 B.R. at 53, and then in a second compromise and settlement referred to as "The Amended Offer." The Amended Offer, which was approved by J. Galgay on June 23, 1981, provided that tendering Subordinated Debenture Holders of Grant would receive a minimum of 19% of the principal amount of the face value of their subordinated debentures. 699 F.2d 599 (2d Cir.1983). Shortly after approving the Amended Offer, J. Galgay held a series of hearings on the applications for fees submitted by various parties to the settlement negotiations, including Bradley J. Brewer of Brewer & Soeiro. *Lewis Aff.* at J.

On July 1, 1981, Mr. Brewer filed Notices of Appeal on behalf of David Cosoff and Helen Finkelstein before J. Duffy of the District Court. *In re W.T. Grant Company. See* 699 F.2d at 607. On March 15, 1982, J. Duffy affirmed the order of the bankruptcy court holding that said applicants were precluded by *res judicata* from contesting the decision on appeal after a first appeal had already been withdrawn and time to join in that appeal had expired. 20 B.R. at 186.

Mr. Brewer appealed J. Duffy's order to the Court of Appeals for the Second Circuit on behalf of appellants Mr. Cosoff and Ms. Finkelstein. 699 F.2d at 606. J. Friendly also granted motions to intervene to a group of individuals including Mr. Hooten, all of whom were represented by Mr. Brewer. *Id.* at 607. J. Friendly affirmed the judgment of the District Court on the merits. *Id.* at 599.

At the State and Federal levels there were related proceedings which were decided concurrently with the litigation of the Amended Offer. *See Weinberger v. Kendrick,* 91 F.R.D. at 494. In *Weinberger,* Grant security holders, including Subordinated Debenture Holders who purchased their debentures during the 34 months preceding the Grant bankruptcy filing, alleged federal securities violations and common-law fraud against the Bank Claimants. *Id.* Shortly after the filing of the *Weinberger* complaint in 1975, Mr. Bader, later joined by Mr. Brewer, instituted an action entitled *Lewy v. Chase Manhattan Bank, N.A.,* Index 17837/75 N.Y.L.J., Jan. 8, 1981 at 6, col. 3 (Sup.Ct., Jan. 2, 1981) on behalf of an alleged class of Subordinated Debenture Holders against the Bank Claimants of Grant. On June 13, 1980, Messrs. Brewer and Bader unsuccessfully moved in State Supreme Court for an *ex parte* order authorizing the named *Lewy* plaintiffs to act as class representatives for all of the Grant Security holders for the purpose of opting said holders out of the "Weinberger Settlement." *See Lewis Aff.* at D. The "Weinberger Settlement" was a parallel to the Amended Offer. *Id.* Messrs. Brewer and Bader were also unsuccessful in moving for a state court injunction, enjoining the parties from proceeding with the "Weinberger Settlement" before J. Duffy. *Lewis Aff.* at D. No appeal was taken from J. Evans' order in the State Supreme Court. Instead, Mr. Brewer filed an appearance in *Weinberger, supra,* on January 19, 1981. *See Lewis Aff.* at C. Said appearance was on the eve of the deadline J. Duffy of the District Court had granted for opt-outs from the "Weinberger Settlement" as set forth in a notice sent to all class members. On February 6, 1981, J. Duffy denied a request made by Mr. Brewer to extend the opt-out period for the entire *Lewy* class. *Lewis Aff.* at V. In spite of challenges made by Mr. Brewer, the "Weinberger Settlement" was approved on the merits by J. Duffy on August 13, 1981, approximately two months after J. Galgay's approval of the Amended Offer. *See Lewis Aff.* at B-1, F. Mr. Brewer appealed that decision

on behalf of a number of named appellants, including Mr. Hooten. *See, Lewis Aff.* C–2.

## DISCUSSION

In deciding a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that such party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c), made applicable by rule 7056 of the Bankruptcy Rules. This court will consider the doctrine of *res judicata* in order to determine defendant's motion for summary judgment.

A finding of *res judicata* is dependent on the existence of three factors including an identity of claim, an identity of parties, and a pre-existing final judgment. Since we believe that J. Galgay's approval of the Amended Offer on July 23, 1981, as well as the reported affirmances in *Grant,* 20 B.R. 186 (S.D.N.Y.1982), *aff'd,* 699 F.2d 599 (2d Cir.), *cert. denied sub nom., Cosoff v. Rodman,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983), refute any possible argument that the judgment was not final, this court will focus on the first two factors mentioned above.

■ To determine whether a second suit involves an identical claim tried in the first suit, we need not find that the issue in the previous action was "framed in the same language or that the same theory of liability was charged in the subsequent action." *Collard v. Incorporated Village of Flower Hill,* 604 F.Supp. 1318, 1323 (E.D. N.Y.1984), *aff'd,* 759 F.2d 205 (2d Cir.1985), *cert. denied,* 474 U.S. 827, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985). Instead, we will apply a transactional analysis to determine whether a second suit involves the same cause of action tried in the first suit. *See Fay v. South Colonie Central School District,* 802 F.2d 21, 28 (2d Cir.1986); *Heimbach v. Chu,* 744 F.2d 11 (2d Cir.1984). Application of such analysis involves the consideration of whether the facts involved in both suits are "related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties expectations or business understanding or usage." Re-

statement (Second) of Judgments § 24(2) (1981).

■ The following uncontroverted factual events are illustrative of the interrelationship between the action presently before this court and earlier actions as they all concern the fairness and legitimacy of the negotiations leading to the Amended Offer. First, Mr. Robson, counsel for Subordinated Debenture Holder Victor Kurtz, addressed the issue of improper fee arrangements between the individuals who participated in negotiations of the Amended Offer in Mr. Brewer's presence at the initial fee hearing on the Amended Offer before J. Galgay on August 11, 1981. *Lewis Aff.* at J pp. 33–37. J. Galgay nevertheless dismissed any inference of improper fee arrangements. Second, Mr. Brewer, on behalf of a class of Subordinated Debenture Holders, raised allegations of fee arrangements in his brief on appeal from J. Galgay's order approving the Amended Offer to the District Court. *Lewis Aff.* at O, pp. 193–95. Third, Mr. Brewer repeated the above allegations in an affidavit of September 1981 which was filed twice in support of motions to stay distribution of estate funds to the Bank Claimants pending appeal of the Amended Offer. *Lewis Aff.* at N–3 pp. 11–13. J. Duffy of the District Court denied the relief sought by Mr. Brewer thereby affirming the Amended Offer. 20 B.R. at 188. Fourth, Mr. Brewer appealed J. Duffy's order to the Court of Appeals for the Second Circuit. *Lewis Aff.* at Q, p. 8. J. Friendly granted plaintiff Hooten's motion to intervene in such action. 699 F.2d at 607. Mr. Brewer prepared a brief dated July 23, 1983 on behalf of Mr. Hooten and others in which allegations of improper fee arrangements were reasserted. *Id.* J. Friendly affirmed the judgment of the District Court on the merits. 699 F.2d at 599. Lastly, Mr. Brewer repeated the allegations of improper fee arrangements in an affidavit dated June 28, 1984 and filed with the District Court in support of a motion for an evidentiary hearing on fee applications. *Lewis Aff.* at Z. For the sixth time, plaintiff's attorney in the present action realleges the

same arguments rejected on numerous occasions, *supra*. Consequently, we deem it appropriate, because of the close relationship between the allegations raised by plaintiff and his attorney in previous actions and those asserted by plaintiff in the present action, to treat this factual progression as a cohesive "unit," *supra*. We believe that this is in conformance with the plaintiff's expectations.

It makes little difference under the doctrine of *res judicata* whether or not the claim of improper fee arrangements was explicitly addressed in any one of the *Grant* decisions. *See Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 599, 68 S.Ct. 715, 720, 92 L.Ed. 898 (1948). Assuming that the parties had a full opportunity to raise their claims now before this court, *infra*, the doctrine of *res judicata* "prevents litigation on all grounds for ... recovery, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131–32, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); *see also Norris v. Grosvenor Marketing Ltd.*, 803 F.2d 1281, 1285 (2d Cir. 1986). Accordingly, the doctrine of *res judicata* may bar "grounds and defenses not previously litigated." *Id.* at 131, *accord Norris*, 803 F.2d at 1285 ("if by necessary implication the issue dispositive of the present action is contained in that which has been explicitly decided, it will be the basis for collateral estoppel.")

Nevertheless, plaintiff asserts that he is not barred by the doctrine of *res judicata* since the record had "closed" on June 23, 1981 and the "key events and evidence" of the complaint occurred subsequent to that date. *Tr.* at 24, May 6, 1987. We find such argument to be incredulous since plaintiff acknowledges that the events of which he complains occurred prior to March 1981, three months before J. Galgay's approval of the Amended Offer. *Plaintiff's statement* ¶ 4(a). Even if we assume *arguendo* that neither plaintiff nor his attorneys had knowledge of the allegations of improper fee arrangements until the August 11, 1981 fee hearings before J. Galgay, the record was not "closed" with respect to such arguments and Mr. Brewer

did indeed have a full opportunity to raise the issue of improper fee arrangements before J. Duffy. Pursuant to Rule 810 of the Bankruptcy Act, the district court may "consider any issue presented by the record, even though it was not discussed by or before a referee." *In re Cabezal Supermarket, Inc.*, 406 F.Supp. 345, 348 (D.N.D.1976); *In re Penn–Dixie Industries, Inc.*, 9 B.R. 936 (Bankr.S.D.N.Y. 1981). Moreover, if Mr. Brewer truly believed that the case was indeed "closed" the proper procedure would have been to move for relief from J. Galgay's Order Approving the Amended Offer pursuant to Fed.R.Civ.P. 60(b). According to Rule 60(b), a party may obtain relief from judgment within one year after judgment is entered for several reasons. *See* Fed.R. Civ.P. 60(b). After waiting six years, Brewer is now precluded from relief under Fed.R.Civ.P. 60(b).

As further proof of an identity of claim, we note that a judgment for the plaintiff would essentially nullify the Amended Offer and void the earlier judgment approving it. *See Herendeen v. Champion International Corp.*, 525 F.2d 130, 133–34 (2d Cir.1975). Accordingly, the Bank Claimants would be required to return the monies previously awarded to them.

█ Next, we consider the second element of *res judicata*, the identity of parties. It is uncontested that plaintiff was a named intervenor in the challenge of the Amended Offer. *See Grant*, 699 F.2d at 607; *see also Lewis Aff.* at P. An intervenor is a party to a suit and is bound by a judgment to the same extent as original plaintiffs and defendants. *County of Cook v. Midcon Corp.*, 574 F.Supp. 902, 913–14 (M.D.Ill.1983), *aff'd*, 773 F.2d 892 (7th Cir. 1985).

█ The fact that plaintiff failed to personally intervene until the Final Appeal of the Amended Offer does not in and of itself act as a barrier to *res judicata*. We note that there is a willingness of the courts to treat claims of subordinated debenture holders as a class through summary proceedings and to bind through those pro-

ceedings debenture holders who do not otherwise appear. *See Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *see also In re Weis Securities,* 605 F.2d 590 (2d Cir.1978) *cert. denied sub nom. Grossman v. Redington,* 439 U.S. 1128, 99 S.Ct. 1045, 59 L.Ed.2d 89 (1979).

Further, in determining whether a party is bound by a final judgment, the operative factor is whether or not such party remained in the suit until the final judgment was rendered. Restatement (Second) of Judgments § 34(2) and Comment b (1981). Thus, for example, one who opts out of a class action or who withdraws as a party prior to judgment will not be bound by a subsequent judgment. *See e.g., Mid–Continent Casualty Co. v. Everett,* 340 F.2d 65, 69–70 (10th Cir.1965) (where a party is dismissed prior to judgment, the "judgment thereafter rendered is not conclusive upon him").

In the case at bar, plaintiff was indeed a party to *Grant* when the final judgment was rendered. *See Grant,* 699 F.2d at 599. There was little effort on his part to separate himself from that judgment. Instead, by tendering $25,000 of the $30,000 face amount of Subordinated Debentures he held, plaintiff indicated his approval of and willingness to be bound by the judgment. *Lewis Aff.* at S–1, S–2. Moreover, plaintiff made an ineffectual effort to opt-out of the *Weinberger* class action and thus is bound by such action. *Lewis Aff.* at V; *see also Mid Continental Casualty Co.,* 340 F.2d at 70. Consequently, in regard to the above, we are convinced that there is no "dispute as to material facts, only as to the legal conclusions to be drawn from them." *In re Ohning,* 57 B.R. 714 (Bankr.N.D.Ind. 1986). Thus, we grant defendant's motion for summary judgment pursuant to Fed.R. Civ.P. 56 and Bankruptcy Rule 7056 dismissing the complaint on grounds of *res judicata.*

■ Next, this court will consider defendant's request for sanctions against plaintiff and his counsel. Defendant seeks an amount of $28,076.23 for all costs of its motion including attorneys' fees and expenses. Pursuant to Fed.R.Civ.P. 11, an attorney or a party's signature on pleadings, motions, and other papers certifies that such paper is "well grounded in fact and is warranted by existing law ... and is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Civ.P. 11; Bankruptcy Rule 9011. If such rule is violated, sanctions "shall" be imposed. *Id.* The inclusion of the word "shall" makes the imposition of sanctions mandatory where the Rule has been violated. *Eastway Const. Corp. v. City of New York,* 762 F.2d 243, 248 n. 7 (2d Cir.1985). Support for sanctions can be found in *Cannon v. Loyola University of Chicago,* 784 F.2d 777, 782 (7th Cir.1986) *cert. denied,* — U.S. —, 107 S.Ct. 880, 93 L.Ed.2d 834 (1987) (sanctions awarded where claim was clearly barred by *res judicata* ). *See also Columbus v. United Pacific Insurance Co.,* 641 F.Supp. 707 (S.D.Miss.1986); *Southern Leasing Partners v. McMullan,* 801 F.2d 783 (5th Cir.1986); *Sparrow v. Reynolds,* 646 F.Supp. 834 (D.D.C.1986).

■ In the instant case, we note that Mr. Brewer is fully aware of the prior litigation involving the same claims he is presently realleging since he himself repeatedly raised them on behalf of the very same litigant, Mr. Hooten. Mr. Brewer's decision to bring the instant suit on the eve of the hearing on his own fee application, more than four years after the final appeal of the Amended Offer as approved, is indicative of a willful intent to harass. *See Andre v. Merrill Lynch Ready Assets Trust,* 97 F.R.D. 699, 702 (S.D.N.Y.1983). Consequently, we deem it appropriate to award sanctions against plaintiff and his attorney, Mr. Brewer. *See,* Fed.R.Civ.P. 11; *In re Usoskin,* 61 B.R. 869, 874 (Bankr. E.D.N.Y.1986); *Cannon,* 784 F.2d at 782; *Southern Leasing Partners v. McMullen,* 801 F.2d 783.

■ In determining the appropriateness of the sanctions against an attorney, the following factors are considered: the attorney's expertise, the time available to the attorney to prepare the complaint, the legal complexities involved, and the extent to

which the attorney supports the motion. *Blake v. National Casualty*, 607 F.Supp. 189, 192 (C.D.Cal.1984).

Applying these factors to the present case, Mr. Brewer had sufficient time during the course of protracted litigation over the *Grant* estate to become well-acquainted with the facts and circumstances of the case as well as the controlling law. Brewer had more than sufficient time to file the present suit, *supra.* Moreover, there existed no legal complexities to excuse his culpability in bringing the groundless action before this court. The issue presently before this court was clearly decided by Judges Galgay, Duffy and Friendly. *Supra.* Finally, Mr. Brewer's support of this complaint is evident since he had raised the very issues of the complaint several times prior to this action.

▮ Further, where a plaintiff and his attorney have acted "egregiously" in filing claims that were admittedly "unprovable," substantial sanctions including *all* costs and expenses may be imposed. *Kendrick v. Zanides*, 609 F.Supp. 1162, 1173 (N.D. Cal.1985); *see also Hudson v. Moore Business Forms, Inc.*, 609 F.Supp. 467, 481 (N.D.Cal.1985).

The above rule of law is applicable to the case before this court. First, the allegations of plaintiff's complaint are baseless since all the pending fee awards are subject to review and approval by the court. *Lewis Aff.* at J pp. 67–68. Second, as noted above, Mr. Brewer was well aware of the unprovable nature of his claims since his former attempts to prove such claims were unsuccessful. *Lewis Aff.* at L p. 25; *Lewis Aff.* at I. Mr. Brewer's litigousness forces the conclusion that his disruptive persistence in resorting to legal process, despite the lack of legitimacy of his claims, was done with hopes that federal officials would "yield to his demands out of sheer exhaustion." *Sparrow v. Reynolds*, 646 F.Supp. 834 (D.D.C.1986). Indeed, Mr. Brewer has been criticized in an unrelated action on grounds of *res judicata* since he raised claims in state court that were formerly rejected in federal court. *Browning Debenture Holders Committee v. DASA Corp.*, 454 F.Supp. 88 (S.D.N.Y.1978);

*aff'd*, 605 F.2d 35, 40–41 and no. 5 (2d Cir.1978). According to the *Browning* court,

The repeated filing of appeals from interlocutory orders, at least one moot appeal and various petitions for writs of mandamus strongly indicate a pattern of harassment, especially since, with one exception, Brewer has failed in each of his nine trips to this Court.... Instead of complying with our remand on that issue, the record is crystal clear that Brewer's commencement of the state court action against the Bank (the subject of the instant permanent injunction) are at least in large measure, if not primarily, for the purpose of diverting the district court from redetermining the claims of DASA and the Bank against Brewer for attorneys' fees.... This pattern of bad faith and harassment on the part of Brewer warrant[s] the award in this Court of double costs and damages against Bradley R. Brewer.... 605 F.2d 35, 40–41 at no. 5.

We are, therefore, in accord with *Sparrow, supra*, in holding that "plaintiff can no longer escape penalty for wasting resources that could have been devoted to rendering justice...." *Sparrow*, 646 F.Supp. at 840.

Accordingly, we find the action taken by plaintiff and his attorney to be most egregious. Thus, we deem it appropriate at this time to impose sanctions against plaintiff and his counsel jointly and severally in the aggregate amount of $28,076.23. *See Cannon v. Loyola University of Chicago*, 609 F.Supp. 1010 (N.D.Ill.1985).

This court also finds it appropriate to grant defendant's motion to enjoin plaintiff and his counsel from relitigating their claims before this or other courts on their own behalf or on behalf of other Subordinated Debenture Holders. *See Sparrow v. Reynolds*, 646 F.Supp. at 834; *Broadcast Music Inc. v. CBS Inc.*, 424 F.Supp. 799, 802 (S.D.N.Y.1976).

Settle Order on notice consistent with this opinion.